GLADNEY, Judge.
This action was brought by George M. Lynch and Faye Stewart Lynch against Paul Culpepper and other defendants for the recovery of damages occasioned by *517 personal injuries received by Mrs. Lynch, loss of wages during the period of disability, and medical expenses incurred by the community. Following a trial on the merits, judgment was rendered in favor of George M. Lynch for a total of $820 as loss of wages, $681.95 for medical expenses incurred, and the sum of $2,000 was awarded to Mrs. Lynch for personal injuries.
The petition filed herein names as defendants Paul Culpepper, City Drug Store and/or Culpepper’s Drug Store, a commercial partnership composed of Paul Culpep-per and Jacob Segura, Sr., Jacob Segura, Sr., and James W. Burr, Sr., individually and in his representative capacity as father of the unemancipated minor, Roy Burr. The judgment rendered below cast Paul Culpepper individually and James W. Burr, Sr., individually, and in his representative capacity. Jacob Segura, Sr., individually, and the named partnership composed of Paul Culpepper and Jacob Segura, Sr., were exonerated and the demands against these parties were rejected. An appeal has been perfected only on behalf of Paul Culpepper, individually, and consequently the judgment is definitive as to the other named defendants. Plaintiffs have answered the appeal, asking that the judgment be increased by this court.
For a cause of action Mrs. Lynch alleges that on August 26, 1953, at about 5:40 o’clock p. m., at which time the weather was clear and the streets dry, she was walking across Washington Street in the Town of Mansfield, Louisiana, when she was struck by a bicycle being ridden by Roy W. Burr, and as a result of the impact she was knocked to the pavement and sustained severe injuries to her left leg and hip, which resulted in operative procedure and extended confinement. Plaintiffs allege that at the time of.the accident Roy W. Burr, a minor, was employed as a bicycle delivery boy by Paul Culpepper and a partnership composed of Paul Culpepper and Jacob Segura, Sr., known as City Drug Store, and that said employee was acting within the scope of his employment at the time his bicycle struck Mrs. Lynch. Negligence is attributed to Burr in that he was riding his bicycle south on Washington Street when the signal light for him was red; that he was riding his bicycle on the left side of Washington Street; that his bicycle was equipped with defective and faulty brakes; and that he failed to keep a proper lookout in time to see plaintiff, Mrs. Lynch, and avoid striking her. Petitioners invoke also the last clear chance doctrine.
In defense of the action brought against them, defendants uniformly assert in their respective' pleadings that the existence of a partnership between Culpepper and Segura was restricted to the handling of prescriptions under the trade name of City Drug Store; that Segura is the manager and druggist thereof which is owned by Paul Culpepper and Jacob Segura, Sr., as equal partners; and that another portion of the drug establishment is solely owned by Paul Culpepper. It is further averred by respondents that Roy Burr was employed solely by the partnership and had no connection with the fountain or sundry departments of the store; that on October 26, 1953, Roy Burr was not making a delivery for the prescription department but was making an unauthorized delivery of a malted milk from the fountain department, and in making said delivery carried no articles of merchandise from the prescription department; and that his salary of $15 per week was paid entirely by the prescription department.
Further answering, the defendants alleged that at the time of the accident Roy Burr was riding a bicycle owned by him, in good working condition, and as he headed south on Washington Street for the purpose of making the aforesaid delivery he stopped for a red light at the intersection of Polk Street; that when the green light came on he waited on traffic to see if any vehicles were making a left turn before proceeding down Washington Street; that *518 Mrs. Lynch started across Washington Street, going east in the face of a red light and in doing so walked out from behind traffic traveling north and south on Washington Street with the green light, and stepped in front of the bicycle being ridden by Roy Burr
It is charged that the accident was caused by the negligence of Mrs. Lynch in: attempting to cross the street in the face of a red light; leaving a place of safety and placing herself in a position of danger; walking directly in front of the bicycle being ridden by Roy Burr; and in failing to see the approach of the bicycle, or if seen, in failing to heed its approach and walking in front of it. Contributory negligence is especially pleaded, and the last clear chance doctrine is invoked. An exception of no cause or right of action filed on behalf of defendants was referred to the merits and disposed of by the trial judge in a written opinion which recorded his decision upon the merits of the case.
We think it proper that it be first determined whether Roy W. Burr was guilty of any act of negligence constituting a proximate cause of the accident. Testimony in behalf of plaintiffs was given by Mrs. Lynch, Gordon Golsan, a motorist who was proceeding westerly on the same light and in the same direction as was Mrs. Rynch, and Miss Earl Cooley, who was driving a motor vehicle north on Washington Street and stopped for a red light at the same time Mrs. Lynch was crossing the street directly in front of her. Evidence was tendered in support of defendant’s position in the testimony of Roy W. Burr, James William Dorman and John Floyd Johnson.
After carefully reviewing the testimony and weighing the credibility of the witnesses involved, the trial court accepted the testimony on behalf of plaintiff and rejected that given by the defendant’s witnesses. After our review of the record it leaves this court in complete agreement with the trial judge in his findings on the issue of negligence.
At the scene of the accident, the intersection of Polk Street and Washington Street, Polk Street enters from the east but does not cross Washington Street, thus forming a “T” intersection. Polk Street runs east and west and Washington Street north and south. The intersection is governed by a traffic signal light reflecting red, yellow and green at intervals. Polk Street is forty-six feet in width and Washington Street is forty-eight feet in width.
Mrs. Lynch testified that after observing the signal light had flashed green toward the east or traffic entering Washington Street from Polk Street, she appraised Washington Street for traffic approaching from the south, and observed the automobile of Miss Earl Cooley stop near the southeast corner of the intersection and she thereupon undertook to walk across Washington Street. After she had taken about three steps, according to her testimony, she was struck by the bicycle which she did not see, and fell to the street, thus sustaining the injuries she has received.
Mr. Gordon Golsan, an attorney of Mansfield, had entered his car which was parked on the north side of Polk Street about twenty-five feet from the intersection with Washington Street, and drove his automobile to the intersection for the purpose of making a south or left turn on Washington Street, and there waited for the light until it gave a green signal. At that time he observed Mrs. Lynch was waiting. He testified he entered the intersection upon the proper signal light as did Mrs. Lynch and he began his left turn, slowing his vehicle so that Mrs. Lynch could safely cross in front of his car. It was at about this time that Roy Burr, riding his bicycle southward along Washington Street, passed the Golsan vehicle from the rear and struck Mrs. Lynch when she was approximately seven feet from the east curb of Washington Street.
*519 The testimony of Miss Earl Cooley is not particularly important except for her statement that when Mrs. Lynch started from the southeast corner of the intersection in front of her car, she was stopped at that point because of a red light toward her. Her testimony, therefore, is corroborative of that of Mrs. Lynch and Golsan that Mrs. Lynch was walking with a green light across Washington Street.
Roy W. Burr testified that he stopped at the northeast corner of the intersection for a red light and proceeded southerly on a green light along the south side of Washington Street. He stated there was nothing to obstruct his view of Mrs. Lynch, who, he declares was walking across Washington Street against a red light. Apparently, Roy W. Burr was watching the automobiles in the intersection and did not see Mrs. Lynch until the moment of impact.
The testimony of Dorman amounts to nothing more than he observed Roy Burr approach the intersection and stop on a red light. He stated also he saw Mr. Golsan cross the street. The inference from his testimony is that Golsan was entering the intersection on a red light and, therefore, Mrs. Lynch was likewise crossing Washington Street upon the wrong signal light.
The judge a quo stated that he was not impressed with the testimony of John Floyd Johnson who testified he saw the accident but also seemed to argue the fault of Mrs. Lynch. Upon cross examination it was shown this witness repeatedly conferred with each of the defendants prior to trial and refused to impart any knowledge to plaintiffs’ counsel. As we read his testimony, the effect of it is to indicate that Mrs. Lynch sought to cross Washington Street on an improper signal. If accepted as true, this testimony would not exonerate Roy W. Burr, who himself admits to negligence by reason of his failure to observe Mrs. Lynch although there was nothing to obscure his view.
Even though it be conceded, arguendo, that Mrs. Lynch was crossing on an improper signal, in our opinion the proximate cause of the accident was the failure of Burr to maintain a proper lookout for the safety of pedestrians. We are, however, convinced there is no error in the finding by the trial court Mrs. Lynch was crossing Washington Street on a green light. The facts fully support the decision from which appealed and we have no hesitancy in finding that the sole and only cause of the accident was the negligence of Roy W. Burr.
The foregoing resolution makes it unnecessary to belabor the question of negligence charged against Mrs. Lynch. Our examination of the record demonstrates no fault on her part and in consequence of this finding the pleas of contributory negligence and last clear chance urged by appellant have no application herein.
The more difficult issue which arises is the relationship between Paul Culpepper, the appellant, and Roy W. Burr. The liability of Culpepper is predicated upon the doctrine of respondeat superior, reflected in Article 2320 of the LSA-Civil Code, which declares that masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. In the instant case it is contended that Roy W. Burr was not an employee of Paul Culpepper and at the time of Mrs. Lynch’s injury Burr was making a delivery which had not been authorized. The trial court concluded from the evidence that at the time of the delivery, Burr was performing no function in behalf of the partnership, and, in fact, was acting beyond the scope of his employment, and, therefore, there was no liability on the part of the partnership, and its individual members.
It is, we think, conclusively established that Burr was employed originally by Mr. Segura and paid entirely by the partnership, that is to say, he received no other remuner *520 ation for his work. There can be no doubt that at the time of the accident Burr was delivering1 a malted milk to Robert Hargett, who was then a patient at the Curtis Clinic. .Without contradiction it was testified by-Hargett that he did not ordar a malted milk, but it was ordered and sent to him gratuitously by Mrs. Carl Talbert, an employee of the Tax Assessor’s office. Miss Shirley Billingsley testified she was an employee of Mr. Culpepper in the sundry department of the drug store, that she received the order over the telephone and directed Roy Burr to make the delivery. She also stated that neither Paul Culpepper nor Jacob Segura was present at the store at the time. Mrs. Culpepper, her superior, was present somewhere in the store when the instructions were given to Burr. It is also clear that Burr had no package or prescription to by delivered from the prescription department of the drug store at the time he undertook his journey.
Miss Billingsley and Roy Burr both testified that they had on numerous occasions, ranging from one to several times per week, participated in receiving orders and making deliveries on behalf of Mr. Culpepper’s store, to the clinic or the hospital. This was done on occasions when prescriptions were being delivered and on occasions when only articles from the sundry department of the drug store were being delivered. A practice was established not to refuse to make deliveries to patients in the clinic or the local hospital. However, Mr. Segura, Mr. Culpepper, Miss Billingsley and Roy Burr testified that they were supposed to secure the permission of Mr. Segura before deliveries other than those from the prescription department were to be made. Upon repeated cross examination it was established that such deliveries were not refused.
The foregoing facts squarely raise the question as to whether Roy W. Burr was acting as an employee of Paul Culpepper on the occasion of the accident. In determining this question it is well to consider that as a partner in the prescription department Roy W. Burr was presumed to have recognized Paul Culpepper as his boss. Furthermore, it must be noted that Burr received no compensation for deliveries when he was not acting within the scope of his employment with the prescription department. Certainly, his employment with the partnership did not require him to make deliveries for Culpepper’s individual business unless there was some understanding that Burr would do so when requested. We recognize, of course, the definition of a partnership and its implications as to the responsibility of its individual members as reflected in the case of Trappey v. Lumbermen’s Mutual Casualty Company, 1956, 229 La. 632, 86 So.2d 515. Nonetheless, the relationship between the prescription department or the partnership and the individual business of Paul Cul-pepper was so close that undoubtedly his power and right to control Roy Burr was not questioned, irrespective of his fuctions, by Mr. Segura, the employees, or Roy Burr.
It is well settled that a contract of hiring may be implied from the circumstances. In Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480, the Supreme Court of the United States had for consideration whether Anderson was an employee of the Standard Oil Company or of a master stevedore. The court, after recording the reasons of the rule for a master’s responsibility, had this to say:
“It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consid *521 eration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the, conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, — a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.”
In the instant case there can hardly be any question when all of the circumstances as reflected in the instant record are considered, that Paul Culpepper in his individual business had the authoritative right to control the actions of Roy Burr when he was on an exclusive mission in the interest of Culpepper’s business. Culpepper stoutly contends that the delivery of the malted milk to Hargett was unauthorized, but this contention does not seem to be supported by the record. In fact, the testimony of Miss Billingsley and Roy W. Burr, indicates very clearly that Culpepper had long before given a general assent and approval for deliveries to the clinic by Burr from his individual business. Certainly, we think it should be noted that the mission was not a personal one for and on behalf of Burr, and it can be assumed that Miss Billingsley simply acted in behalf of her employers. The statement of law as; set forth in the Standard Oil Company v. Anderson decision has been fully approved in this state in Benoit v. Hunt Tool Company, 1951, 219 La. 380, 53 So.2d 137.
We resolve, as did the trial judge, that at the time of the accident the relationship of master and servant existed between Paul Culpepper and Roy W. Burr, and that the latter was acting within the scope of his authority in delivering the malted milk from Culpepper’s business to the clinic. In view of our holding as hereinabove set forth, we must also agree with the conclusion of the trial judge that the exception of no cause or right of action, or exception of want of interest was properly overruled. •
Our further consideration is directed to an examination as to quantum. Plaintiffs object to the award in that it is too small and appellant seriously contends that it is too large.
The record reveals that Mrs. Lynch sustained a complete break of the left thigh, that is an intracapsular fracture of the neck of the left femur. She was removed from the hospital at Mansfield after X-rays had disclosed the nature of her injury to the North Louisiana Sanitarium in Shreveport, Louisiana, where on October 27, 1953, Dr. D. F. Overdyke, Jr., orthopedist, performed an open reduction of the fracture and affixed a Smith-Petterson nail. She remained in the hospital until October 29, 1953, when she returned home and remained in a hospital bed there for a period of six weeks. . She then used a wheel chair for another eight weeks. On April 6, 1954, the patient was walking with one crutch apparently without pain. When observed by Dr. Overdyke on August 9, 1954, Mrs. Lynch was able to walk without the aid of a crutch or cane and had returned to normal activity. In order to assist Mrs. Lynch in securing employment, Dr. Overdyke on May 7, 1954, wrote a letter to her former employer advising that Mrs. Lynch was able *522 to return to full time employment. Dr. Overdyke explained that at the time this letter was written, Mrs. Lynch was suffering from fatigue, with a hit of swelling, and some stiffness and pain upon maximum motion. Mrs. Lynch testified she was able to do some work prior to October, 1954, since which time she has been receiving a weekly wage of $30.
Dr. Overdyke, from an examination of Mrs. Lynch on November 28, 1954, concluded that because of generalized discomfort and fatigability about the hip, a partial permanent disability of from ten to fifteen per cent of the body as a whole, was estimated. Mrs. Lynch was forty-six years of age when injured. She testified as a result of the injury to her left thigh the added weight placed on her right foot caused the arch of her right foot to break down, thus occasioning pain which necessitated prescriptions for sedation. She complained of residual pain at the time of trial, more than two years after the accident. Dr. Overdyke said she will continue to have fatigue and weakness as a result of the hip injury. We accordingly believe that the judgment in favor of Mrs. Lynch in the sum of Two Thousand ($2,-000) Dollars is inadequate and should be increased to Four Thousand ($4,000) Dollars.
Counsel for George W. Lynch argues on the appeal that the allowance by the trial court for the loss of earnings by Mrs. Lynch in the sum of Eight Hundred Twenty ($820.00) Dollars should be increased. The petition limits the entitlement of the earnings to One Hundred Twenty-Five ($125.00) Dollars per month, alleged therein to be the monthly earning before injury. Evidence presented through the income tax return of Mr. Lynch indicates that Mrs. Lynch earned during the year 1953 an average monthly wage of One Hundred Forty-One and 26/100 ($141.26) Dollars. However, because of pleadings any award to be made, must, in our opinion, be limited by the pleadings. Although Dr. Overdyke wrote a letter to Mrs. Lynch’s former employer that she was able to return to work as of May 7, 1954, his testimony indicates that actually she could not perform her duties without pain and discomfort. Mrs. Lynch testified that she was not able to really resume her full duties until October or at least four months subsequent to the date of Dr. Overdyke’s letter. We think Mr. Lynch is entitled to recover for loss of earnings from August 26, 1953, until September 26, 1954, or for a thirteen month period, the effect of which allowance Í9 to increase the award therefor to a total of One Thousand Six Hundred Twenty-Five and No/lOO ($1,625) Dollars. We approve of, as being correct, the finding of the trial judge as to the medical expenses and find no occasion to alter the amount.
For the foregoing reasons the judgment from which appealed is amended by increasing the award in favor of Mrs. Lynch to the sum of Four Thousand ($4,000) Dollars and by increasing the amount in favor of George W. Lynch to the sum of One Thousand Six Hundred Twenty-Five and No/100 ($1,625) Dollars.
As so amended, the judgment is affirmed at appellant’s cost.
PER CURIAM.
Motion to correct the opinion and decree of this court rendered June 28, 1957, has been filed by counsel for plaintiffs-appellees. After consideration of the matters set forth in said motion the same is allowed and, accordingly, the opinion and decree are corrected to the extent hereinafter set forth.
The allowance to plaintiff, George M. Lynch, for his wife’s loss of earnings should be based upon a period of eleven months beginning with the date of the accident, October 26, 1953, and running until September 26, 1954, at the rate of $125 per month, aggregating the sum of $1,375.
*523 Accordingly, it is ordered, adjudged and decreed that the judgment from which appealed be and it is hereby amended by increasing the award in favor of plaintiff, Faye Stewart Lynch, to the principal sum of $4,000, and by increasing the amount of the judgment awarded in favor of plaintiff, George M. Lynch, to the principal sum of $2,056.95.
As amended the judgment is affirmed at appellant’s cost.
Appellant’s application for rehearing is denied.