BACON v. SNASHALL.

1. NEGLIGENCE — MAY BE ESTABLISHED BY CIRCUMSTANTIAL EVIDENCE—MAY BE INFERRED FROM ESTABLISHED FACTS.

Although the mere happening of an accident, standing alone, is not evidence of negligence, yet negligence may be established by circumstantial evidence, and where the circumstances are such as to take the case out of the realm of conjecture to within the field of legitimate inferences from established facts, a *prima facie* case is made.

2. SAME—MOTOR VEHICLES—NEGLIGENCE IN PARKING CAR ON A HILL MAY BE INFERRED.

In an action for injuries caused to plaintiff by defendant's automobile when it ran down a hill after he had left it parked, the testimony, with permissible inferences to be drawn therefrom, *held*, sufficient to carry to the jury the question of defendant's negligence, although there was no direct evidence thereof.

[1]Negligence, 29 Cyc. pp. 590, 622, 629; 20 R. C. L. 180, 184; 3 R. C. L. Supp. 1042; 4 R. C. L. Supp. 1344; 5 R. C. L. Supp. 1087; [2]Motor Vehicles, 28 Cyc. p. 49.

3. APPEAL AND ERROR—WEIGHT OF EVIDENCE — SAVING QUESTION
   FOR REVIEW.
   In the absence of a motion for a new trial, the question
   as to whether the verdict is against the great weight of
   the evidence is not open to review. ˙

Error to Kalamazoo; Weimer (George V.), J. Submitted October 8, 1926. (Docket No. 58.) Decided May 3, 1927.

Case by Justin H. Bacon against C. H. Snashall for personal and other injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Jackson, Fitzgerald & Dalm,* for appellant.

*Stevens T. Mason* and *William R. McCaslin,* for appellee.

STEERE, J. Plaintiff brought this action to recover for personal injuries claimed to have been received in an automobile accident through defendant's negligence. He had verdict and judgment for $1,755. His injuries were serious, and it is not claimed the amount of the judgment is excessive provided legal liability is shown. Defendant's assignments of error all center on the one contention that the evidence failed to make out even a *prima facie* case of actionable negligence on defendant's part. This question was saved for review by motion for a directed verdict at close of plaintiff's testimony, also when both parties rested, and, after verdict, for judgment *non obstante veredicto* in defendant's favor, all of which were denied. The accident was caused by defendant's runaway automobile which he had left parked on a street in the city of Kalamazoo. It occurred during commencement season, on the afternoon of June 16, 1925, while defendant was attending a reception at the home of the

²Appeal and Error, 3 C. J. § 906.

president of Kalamazoo college, which was located at the southeast corner of Monroe and Academy streets. Academy street runs east and west near the college grounds and past the president's residence. It is a paved street with cement curbs and has a grade downward to the east which is gradual at first but becomes more precipitous as it descends for over two blocks, and is spoken of as "Academy Hill."

Defendant, whose home was in Illinois, drove to the reception in his Buick sedan with his wife and sister-in-law. He parked his car in front of the president's residence on Academy street near the walk leading up to the house, arriving, as he states, about 10 minutes before 5. He and the two ladies who accompanied him testified that he ran his car diagonally against the curb at an angle of about 30 degrees, put on the emergency brake, locked the ignition, put his windows up within an inch of the top and locked all the doors. After attending the reception for a time, he went with his wife and her sister to visit a building on the college grounds. He returned to the president's house shortly after 6 o'clock, as he testified, when he found his car gone and learned of the accident.

Plaintiff, who lived in Kalamazoo, also attended the reception, driving there in his car. On leaving he had some trouble in starting, and, squaring it away on the street, coasted down the hill with it, stopping by the curb at the bottom of the hill about two blocks east of the president's house, where he got out, took up the front floorboards, and was working on his car when struck by defendant's driverless auto. Of the accident he testified that he had a vague memory of some one calling to him and of hearing something up the hill, but it was very hazy, and the only thing he could remember distinctly thereafter was waking up in the hospital the next day. Defendant's testimony tends to show that this accident occurred in the

neighborhood of an hour after he parked his car in front of the house. A witness who saw defendant's car speed down the hill and the accident testified that when it struck plaintiff it had reached a speed of between 25 and 35 miles an hour.

It is claimed for plaintiff to be a fair inference from the testimony as a whole that defendant was negligent in parking his car where and as he did; that it is inferable from the facts and circumstances shown he left it in such an unsafe condition and place that it in some way easily moved from the curb, and, responding to gravity, coursed down the hill with increasing speed, causing the accident.

Defendant claims, in substance, that the doctrine of *res ipsa loquitur* does not apply in this jurisdiction, and there is no testimony direct or inferential showing how this car, which was left by defendant safely locked and brakes firmly set, started an hour later down the incline as it did.

It is true, as contended for the defense, that the mere happening of an accident, standing alone, is not evidence of negligence, but, in that connection, this court has uniformly held that negligence may be established by circumstantial evidence, and where the circumstances are such as to take the case out of the realm of conjecture to within the field of legitimate inferences from established facts, a *prima facie* case is made.

"Negligence, like any other fact, may be inferred from the circumstances; and the case may be such that, though there be no positive proof that defendant has been guilty of any neglect of duty, the inference of negligence would be irresistible." *Alpern* v. *Churchill,* 53 Mich. 607.

Such a rule has been repeatedly announced by this court. *Barnowsky* v. *Helson,* 89 Mich. 523 (15 L. R. A. 33); *Schoepper* v. *Hancock Chemical Co.,* 113 Mich. 582; *O'Neill* v. *James,* 138 Mich. 567 (68 L. R.

A. 342, 5 Ann. Cas. 177, 110 Am. St. Rep. 321);
*Burghardt* v. *Railway,* 206 Mich. 545 (5 A. L. R.
1333); *Woods* v. *Chalmers Motor Co.,* 207 Mich. 556;
*Fuller* v. *Magatti,* 231 Mich. 213.    In Huddy on Auto-
mobiles, 539, it is said:

"The jury is not required to believe the evidence of
the driver that he set the emergency brake and turned
the wheels toward the curb, although such evidence is
not contradicted except by the fact that the car
started."

Act No. 287, Pub. Acts 1925, which was in effect
at the time of this accident, requires under prescribed
penalty for violation that every motor vehicle operated
upon public highways must be equipped with an ade-
quate brake system, specified in detail, including an
emergency brake capable, amongst other things, "of
holding the vehicle on any grade which it can ascend."
Both defendant's testimony, and that of experienced
automobile men who examined the car at the garage
where it was taken after the accident, tended to show
it was so equipped, and if the emergency brake was
properly set it would hold the car at any point on
that hill.    Defendant's testimony as to how he left
the car parked runs as follows:

"I did not put the car in gear when I parked it.  My
emergency brake was in first rate condition.    I don't
know that I told you that I didn't know whether or
not I had my emergency as tight as I should have had.
I remember talking this case over with you in the
office of Mr. Olmstead.    A man can always pull it a
little tighter, and yet I don't believe I could this time.
My wife remembers my pulling it up and pulling it
up as tight as it could be.    I remember of saying
to you in the office of Mr. Olmstead, 'I don't know
whether I had the emergency as tight as I could have
had it.'  You can always say that.    I know that
emergency was tight, but a man can always pull it a
little tighter.    In that way I might have said that
remark.    A man can always pull his emergency a little
tighter, but I believe absolutely that the emergency

was on tight enough to hold that car, all my driving of the car. I have no explanation to make as to how my car left the place where it was parked. I wish I did."

Defendant's witness Beach, the Kalamazoo service manager of Buick sales with many years of experience, who examined the car and tested the brakes just after the accident, testified that the emergency brake was in good condition and when properly set would kill the motor, or hold the car on any grade of Academy Hill, and the car was capable of ascending any grade on said hill. He also stated:

"A Buick emergency brake can be pulled so tight that it can't be made any tighter. If you pull it back until it ends where the ratchets are on the brake, you can't pull the lever any farther."

While the length of time in which the car remained parked before starting is an element not to be ignored, we are not impressed that under the circumstances of this case it is as a matter of law conclusive in defendant's favor. If the emergency brake was not properly set there was a possibility, as appellant seems to recognize and cited cases show, that the jar of a heavy vehicle passing by or a bump by another auto might loosen the mechanism and permit the parked auto to slowly start down the grade on which it was left. In such event the length of time it stood there before starting would be of scant significance. Clearly it was the duty of defendant to so leave his parked car on the top of this hill that such incidents would not affect it. While there is no direct evidence of any such incident, there is strong positive proof that with the emergency brake properly set the car could and would safely stand on the incline where it was parked, and the undisputed fact that it did start from there and ran wild down the hill with the disastrous result shown. The possibility of some one having tampered with the brakes is substantially neg-

atived by defendant's testimony that he closed and fastened the windows and locked the doors when he left it, and the fact that right after the accident a policeman found it in that particular just as defendant testified he left it.

We are of opinion that, viewing the testimony in the light most favorable to plaintiff with relation to inferences permissible to be drawn therefrom, there was sufficient legal evidence of defendant's negligence to carry that issue to the jury. So reasoned, and fairly in point as precedent, are *Fuller* v. *Magatti, supra,* and *Dorne* v. *Adams,* 243 Mass. 438 (137 N. E. 650).

The question of whether the verdict is against the great weight of evidence is not before us, as no motion was made for a new trial. Defendant's counsel frankly say of their assignments of error:

"Defendant makes no contention in this case that the verdict is excessive or that the plaintiff is not entitled to the amount recovered if he is entitled to recover at all in this action. Defendant raises, by the assignments of error in this case, only one question, namely his liability under the evidence."

Upon that proposition we are of opinion that the trial court did not err in submitting the question of defendant's negligence to the jury. We find no reversible error, and the judgment will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.