# LUCY POPE TAYLOR v. NORTHERN STATES POWER COMPANY.[1]

December 20, 1935.

No. 30,532.

[Redacted]

[1]Reported in 264 N. W. 139.

See 192 Minn. 415, 256 N. W. 674.

*Briggs, Weyl & Briggs* and *L. H. Morse,* for appellant.

*Wilson & Wilson,* for respondent.

JULIUS J. OLSON, JUSTICE.

In this action for personal injuries plaintiff prevailed below. The appeal is from the judgment entered pursuant to the verdict. The case has been here before, 192 Minn. 415, 256 N. W. 674, after verdict had been rendered for defendant. There was reversal here because the trial court erroneously refused to permit the testimony of one of plaintiff's witnesses to the effect that a short time after plaintiff had fallen the witness had entered the same room and that he slipped and nearly fell at substantially the same place. We there held that such testimony was competent and material. The case was tried anew, with the result hereinbefore stated. The facts will be gone into more fully later.

Defendant maintains at Mankato a well-illuminated office and salesroom, the floor of which is surfaced with battleship linoleum. Along about noon, February 13, 1933, plaintiff, employed as society editor and reporter by the Mankato Free Press, entered to pay her own bill and seek news for her paper. Snow having been tracked in by those entering, the floor near the door had become wet and somewhat slippery. Plaintiff had just traversed several blocks of "extremely icy and slippery" sidewalks. "The ground was covered with ice, just a little fine, dry snow on top of the ice," she testified. She had walked with much care, "afraid of falling." She was "relieved" when she got in where she "supposed it was safe." A few steps inside the door plaintiff slipped and fell, suffering an intracapsular fracture of the upper end of the right femur.

There is much argument for defendant which we do not even consider, for it is wide of the one target presented. There was no motion for new trial, and, the appeal being from the judgment, the

24

only question is whether the verdict has reasonable support in evidence. Robbins v. New York L. Ins. Co. 195 Minn. 205, 262 N. W. 210, is the latest of many cases so holding. We just mention in passing that complaint about inclusion in the taxation of costs of certain items is also out of place because not presented to the trial court as it should have been.

■ Equally out of view is certain evidence at the first trial which is the basis of some argument for appellant. So far as it did not get into the record at the second trial, which is all that now is before us, we must ignore it. "The evidence at a former trial is not a proceeding or part of a proceeding within the rule that courts may take judicial notice of prior proceedings in the same action." A *fortiori*, the jury in the second trial could have had nothing to do with it. It was extraneous matter beyond their reach in deciding the case. It is equally beyond ours in reviewing their decision. MacIntyre v. Albers, 175 Minn. 411, 413, 221 N. W. 526.

■ Unsound also is defendant's contention that because plaintiff was entitled to and has received compensation from her employer under the workmen's compensation act, 1 Mason Minn. St. 1927, § 4291(1), she is thereby without right of recovery in this action. As a matter of law, plaintiff's employer and defendant were not engaged either "in furtherance of a common enterprise" or "the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof." The statutory conditions precedent to the validity of defendant's argument on this point are lacking under the rule of Horgen v. Franklin Co-op. C. Assn. 195 Minn. 159, 160, 262 N. W. 149, and the earlier cases therein considered.

■ Proceeding to the determinative question whether the evidence discloses negligence, the facts need some further examination. Counsel for plaintiff put the situation thus: "Earlier in the forenoon it had snowed. The sidewalks were extremely icy and slippery. The day was cold. Plaintiff wore galoshes * * *. The place where plaintiff slipped and fell on the floor was wet, sloppy and slippery, water being on the waxed linoleum." They candidly concede that the "waxed floor alone" does not create liability. "The

use of a waxed floor, or the mere use of marble, tile, hardwood, or any other commonly employed floor material in the construction of a floor, is not negligence."

Defendant's floor consisted of a concrete slab overlaid with "battleship" linoleum, which in turn had been waxed. As to construction, it was standard all the way through. The linoleum was of a sort widely used in both public and private buildings where floors are subjected to much and hard use. The wax was also a standard treatment, its purpose to render the linoleum impervious to moisture and more resistant to wear. The result was a hard, smooth surface.

The question for review may perhaps be better understood if further reference be made to the testimony adduced in plaintiff's behalf. She was 58 years old at time of trial and had been a customer of defendant over a period of more than 30 years. She went into defendant's place of business on February 13, 1933, at about 11:30 o'clock in the forenoon. In this room, used as a salesroom, there was merchandise sold by defendant consisting of refrigerators, gas stoves, and other items of equipment similar in kind. When she got into the room she took a few steps inside, then slipped and fell. "The floor was like grease—my feet cut out from under me. I went down. I knew I broke my hip, I felt it." This happened some six or eight feet from the entrance. She was lifted to a chair and while sitting there observed that the floor was "wet and sloppy from the door clear up near my chair." The wet and slippery strip was "about four feet wide" and extended "from the door about ten feet." She observed that her coat, particularly the sleeve, was "matted and wet." The floor appeared "highly polished." "I could see the streak across the floor where I had fallen." Several other witnesses testified to the same effect. All these witnesses appear to be men and women of standing in the Mankato community. A Mr. Manderfeld testified that he had many years' experience in waxing floors and that he sold floor wax. The purpose of using wax on linoleum is to preserve it, to "make a little higher luster on it, easier to clean." By this process the linoleum is preserved because thereby an extra film, "wax film over the original finish," is brought about. The effect on linoleum is to make it im-

pervious to water. If you put water on a waxed floor the consequence is that it appears "like water on grease; it is apt to make it slippery." The water cannot soak through the wax. It was his opinion that the "practical and reasonable method" of guarding against accidental slipping is to use rubber matting or rugs, rubber strips to walk upon or pieces of rag carpet. Mr. Buchholz testified that the wax in the instant case was put on with a waxing machine. It was a paste wax. Other witnesses for defendant said that the material was a liquid wax and put on with a mop. Some of defendant's witnesses said that there were two coats of wax put on, others that there was only one coat so applied.

From this state of the record the question arises whether want of due care under the circumstances appears so that a fact issue is thereby presented. If defendant had an ordinary floor in its place of business and while in the process of cleaning the same had used soap or other substance leaving the floor soapy and slippery and for that reason unsafe for ordinary use, it would seem that a *prima facie* case would thereby be made. That, in sum and substance, is our holding in Usher v. Eckhardt, 176 Minn. 210, 222 N. W. 924. We had occasion later, in McIntyre v. Holtman, 193 Minn. 439, 258 N. W. 832, to consider a condition very similar to what plaintiff here encountered. There defendant had used an oily substance in cleaning its hardwood floor. At the spot where plaintiff fell a light film of oily substance had been permitted to remain, thereby leaving the floor slippery. There the verdict of the jury finding negligence was sustained. The cases bearing upon this subject are therein referred to and cited. 193 Minn. 442, 258 N. W. 834.

In the two cases mentioned there was active negligence on defendant's part in each instance. So the question arises here whether inaction or nonaction may be considered the same as if there had been active negligence. Obviously, if it was defendant's duty to act and it failed in that regard, such violation of duty, if the same was the proximate cause of plaintiff's injury, created a case for plaintiff. This rule is clearly established in Goar v. Village of Stephen, 157 Minn. 228, 237, 196 N. W. 171, 174. There plaintiff

sought to hold the contractor-builder, Minnesota Electric Distributing Company, concurrently liable with the village because of its negligent construction of the village electric distributing system. Negligence against the village was predicated upon the theory that it had failed to inspect and repair. The trial judge was of opinion, as stated in his memorandum [157 Minn. 237]:

"If negligence of the village had been active, I have no doubt it would have relieved the electric company from liability in this case, but where the negligence of the village was failure to do anything and natural causes brought the wires together causing the accident, I am of opinion the defendants should be held concurrently liable."

This court reversed as to the contractor-builder, holding [157 Minn. 237]:

"We do not reach the same conclusion, because we differ with the view that wrongful omissions are of less effect in law, and attended by less serious consequences, than positive wrongdoing. Action, where legal duty requires no action, is no worse than inaction where legal duty requires action. There is no difference in law or morals between the effects attending the two. Negligence more frequently accompanies omission than commission; but, whatever its cause, its legal consequences are the same."

After all, in every negligence case, liability must necessarily depend upon the peculiar facts and circumstances therein arising. General rules are helpful, but they should not be so used as to deprive an injured plaintiff, in the exercise of reasonable care and diligence, from recovering the damages proximately flowing from a negligent defendant's act, whether active or passive. In either event the "legal consequences are the same." The condition of this floor when wet, because of the application of the wax upon the linoleum, left it in such condition as to be dangerous to defendant's customers properly upon and within its premises for legitimate purposes. Of course defendant is not an insurer, but it is required to exercise the degree of care of the ordinarily prudent person. True, the cases are not in complete harmony. That is hardly to be

expected. It is indeed difficult to distinguish many of them. But we think our prior decisions sustain recovery here and that the evidence sustains the verdict of the jury. It has the approval of the trial court. The case has been tried twice. This litigation should now be ended.

■ The question of plaintiff's contributory negligence was for the jury.

Judgment affirmed.

STONE, JUSTICE (dissenting).

In the law of this case as stated by the syllabus I concur. My disagreement with the result is due to my inability to find in the evidence anything sufficient to sustain a finding of negligence. Only by implication can I conclude that the failure of defendant either to keep its floor dry or to cover it by additional matting constitutes the omission held to be negligent. The surface was "soapy" only in the sense that it was slippery. There was no "soap" or aught else of similar character not brought in on the footwear of customers. There is no claim that the waxed surface itself was changed in texture or otherwise. For that reason, failure seems to me to attend the attempt to put the action in the same category with Usher v. Eckhardt, 176 Minn. 210, 222 N. W. 924. The plaintiff therein, a patron of the cafe wherein she was injured, entered over a dry floor. Before her exit, what the jury could have found was "soapy" scrubbing water had been left on the floor in dangerous quantity at the spot where she fell. The floor, on adequate evidence, was found to have been in an abnormal and dangerous condition due to an act of the defendant.

The construction of this defendant's floor, including the surface treatment, not even suggesting negligence, there can be none unless something else appears—some other act or omission such as that just indicated as being the decisive factor in Usher v. Eckhardt, 176 Minn. 210, 222 N. W. 924. A case in point is Bodine v. Goerke Co. 102 N. J. L. 642, 133 A. 295, where under parallel circumstances recovery was denied as matter of law. Another case is S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N. E. 174, 175, 58 A. L. R. 132.

Its application is shown by the following quotation [116 Ohio St. 723]:

"Owners or lessees of stores, office buildings, banks, hotels, theaters, or other buildings where the public is invited to come on business or pleasure, are not insurers against all forms of accidents that may happen to any who come. Everybody knows that the hallways between the outside · doors of such buildings and the elevators or business counters inside the buildings during a continued rainstorm are tracked all over by the wet feet of people coming from the wet sidewalks, and are thereby rendered more slippery than they otherwise would be. The same thing is true in the hallways of all postoffices. It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail.

"It should be borne in mind that this accident did not happen in some dark walkway in the· store where the shopper found it necessary to go. It occurred in broad daylight, and there is no pretense that there was anything to prevent any shopper from seeing and knowing precisely what the conditions were."

Other authorities are gathered under the subtitle "Slippery Places" in the annotations appearing at 33 A. L. R. 221, and 58 A. L. R. 142.

The judicial habit of distinguishing precedents is much overdone, I know. But it would be unfair to the argument of counsel not to indulge in it somewhat further here. The thing determinative in McIntyre v. Holtman, 193 Minn. 439, 258 N. W. 832, was that on a wooden floor oil had been improperly applied, leaving some spots much more slippery than others. Nothing of that kind can be claimed here except that the dry floor was not as hazardous as the wet. The wetting was due to no act of defendant, but solely to the elements and ordinary use. In Langley v. F. W. Woolworth Co. 47 R. I. 165, 167, 131 A. 194, there was evidence that a "pint of peanuts" had gotten spilled on the floor and "ground in." As a

result the plaintiff slipped and fell to her hurt. Like some other cases referred to, it had factual foundation for the conclusion of negligence not present here.

We need not labor the rule that "one who keeps a store or shop is bound to exercise reasonable care to keep it in a safe condition for his customers." 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 6987. No one questions that. Neither does anyone aver that a shopkeeper is an insurer of the safety of his customers. As already indicated, the evidence does not suggest any defect of construction. There is testimony that rubber matting is sometimes used under conditions such as those present in this case. Defendant had put down a "cocoa door mat." But the floor had been wetted and soiled well beyond that and into the room. As a practical matter, if it was negligent not to have rubber matting in front of the door, it could be claimed with equal force that it would be want of due care not to have such covering wherever the floor happened to be wet from snow or slush melting from the feet of customers. Hence, in order to avoid making any such claim one for solution as of fact rather than law, and however safe and modern a floor otherwise, it would yet have to be covered by matting. That conclusion is not urged in argument. But it shows how prolific of questionable results would be a holding that mere absence of any matting could be taken as evidence of negligence. Under adverse weather conditions, any uncovered spot on any much frequented ground floor salesroom would be a source of enough danger to sustain a finding of negligence. That conclusion shows the invalidity of the argument by which it is reached.

The rule I deduce from the cases is that where the hazard is obvious, as much so to the injured party as to the owner, and a well-lighted floor, free from structural defects, is made slippery only by the presence thereon of water due wholly to temporary adverse action of the elements and ordinary use, the owner is not liable as for negligence where the only omission chargeable to him is a failure to remove or render absolutely harmless the agency of injury. To permit negligence to be predicated on such nonaction,

without more, would in practical effect make an insurer of the owner, a result the law does not permit.

DEVANEY, CHIEF JUSTICE, took no part in the consideration or decision of this case.