SAVOY, Judge.
Plaintiff, Joseph Malone, brought suit for damages and/or workmen’s compensation. In damages, he sought $192,024.92, representing personal injuries, loss of past and future wages and past and future medical expenses. In workmen’s compensation, he sought benefits as for total and permanent disability, medical expenses, penalties of 12% and attorneys’ fees of $3,500.00.
Plaintiff’s original petition alleged, on information and belief, that defendants, Allen Joubert and Gilbert Joubert, did business in St. Landry Parish, Louisiana, under a part *855 nership known as Plaisance Wholesale Grocery, or that one of them did business under that name; that Allen Joubert also conducted a business of his own known as Allen Joubert’s Feed Store; that on or about June 20, 1960, while working for one or the other of said defendants, plaintiff was crushed against a building when a truck he was helping unload rolled back, pinning him between the truck and the loading platform of the building; that the truck was owned by one or the other of the said defendants or by the partnership alleged to exist between the Jouberts; that the driver of the truck was employed by one or the other of them or by the partnership; that defendant, Marquette Casualty Company, insured the truck against liability arising out of its operation in the name of the partnership or of Allen Joubert. Damages as set forth hereinabove were prayed for.
Plaintiff next filed an amended petition, alleging that Marquette Casualty Company insured any truck owned by either of the defendants Joubert; that Marquette had also issued a policy of workmen’s compensation insurance covering either Plaisance Wholesale Grocery or Allen Joubert; and further alleging negligence on the part of the truck driver, both by specific enumeration and under the doctrine of res ipsa lo-quitur. The prayer for damages was reiterated.
Defendant, Marquette Casualty Company, answered plaintiff’s original and amended petitions, generally denying the allegations thereof. In addition, Marquette admitted that it had issued an automobile liability policy to Allen Joubert, d/b/a Plaisance Wholesale Grocery. The answer further set forth that plaintiff’s claim would lie solely in workmen’s compensation, and alternatively, that plaintiff was contributorily negligent with respect to the accident in which he was injured in the event some negligence in the operation of the insured vehicle was found.
Plaintiff next filed a second amended petition, reiterating the allegations and prayer for damages of the prior petitions filed, and making The Security Insurance Company of New Haven a party defendant, alleging, on information and belief, that it also had issued automobile liability and workmen’s compensation insurance policies covering Plaisance Wholesale Grocery and/or Allen Joubert.
Marquette Casualty Company answered the second amended petition, denying any liability to plaintiff on its part.
An answer to plaintiff’s petition and all amendments thereof was filed by Gilbert Joubert, d/b/a Plaisance Wholesale Grocery, and Security Insurance Company of New Haven. This answer generally denied all of the material allegations of plaintiff’s petition, and in addition, set forth that Gilbert Joubert did business as Plaisance Wholesale Grocery; that Allen Joubert was the manager of Plaisance Wholesale Grocery; and that Security was the workmen’s compensation insurance carrier of Gilbert Joubert, d/b/a Plaisance Wholesale Grocery.
The next pleading in the record is the answer of Allen Joubert to all of the petitions filed by plaintiff and a third party demand against Marquette Casualty Company. The answer denied any liability to plaintiff, and, in addition, set forth that Plaisance Wholesale Grocery was owned and operated by Gilbert Joubert; that Marquette Casualty Company insured vehicles owned by Allen Joubert against liability; that those vehicles were sometimes used by his father, Gilbert Joubert, in connection with the operation of Plaisance Wholesale Grocery; and that the driver of the truck on the day of the accident was employed by Plaisance Wholesale Grocery. The third party demand against Marquette Casualty Company sought attorneys’ fees of $2,000.00 for that company’s alleged failure to defend Allen Joubert with respect to possible liability under the automobile liability policy.
Marquette Casualty Company answered the third party demand, denying liability on *856 the basis that no coverage was provided for the demand made.
After trial on the merits, the district court, in a written opinion, gave judgment for plaintiff as follows:
(1) Against Allen Joubert, workmen’s compensation of $1,622.40, $31.20 per week for 52 weeks; and $1,332.70 for medical expenses incurred;
(2) Against Gilbert Joubert, d/b/a Plai-sance Wholesale Grocery, and Marquette Casualty Company, $9,763.00. Additionally, plaintiff’s suit was dismissed insofar as it applied to Security Insurance Company of New Haven, and Allen Joubert was held entitled to collect by preference out of the judgment against Gilbert Joubert, d/b/a Plaisance Wholesale Grocery, and Marquette Casualty Company, any compensation benefits actually paid by Allen Joubert to plaintiff.
From that judgment, defendants, Allen Joubert, Gilbert Joubert and Marquette Casualty Company, have appealed, and plaintiff has answered the appeals.
Plaintiff’s contention that he is entitled to the awards hereinabove set forth is countered by the following contentions of the various defendants. Allen Joubert contends that plaintiff was not acting within the scope of his employment and is, therefore, not entitled to workmen’s compensation benefits from him. Gilbert Joubert, d/b/a Plaisance Wholesale Grocery, and Security Insurance Company of New Haven, contend that plaintiff’s claim for workmen’s compensation was properly dismissed as to them. Marquette Casualty Company contends that Marion Jackson, 'the driver of the truck, was not an omnibus insured under its liability policy issued to Alien Joubert and that, in any event, plaintiff was contributorily negligent.
The record in this case is lengthy, detailed and involved, but suffice it to say that the evidence establishes the following facts.
On June 20, 1960, plaintiff was employed by Allen Joubert. Plaintiff and a Mr. Ewell Pitre were engaged in putting tin siding on a building leased by Allen Joubert for use in his own business known as Allen Joubert Feed Store. During the morning of June 20th, Marion Jackson, an employee of Gilbert Joubert, d/b/a Plaisance Wholesale Grocery, made a delivery of tin siding to-the said building. The truck (a Diamond-T), apparently weighing two (2) to three (3)tons, was backed up about four (4) or five (5) feet from the loading platform of the building, whereupon the driver and plaintiff commenced to unload the tin, which was packed in bundles, and guide it up onto-the loading platform where, with the help of Mr. Pitre, it was placed in stacks. Plaintiff and the driver were standing on the ground between the truck and the loading platform. The rear wheels of the truck were on a slight incline, its motor was-' running, its gears were in neutral, its hand brake had been applied by the driver and he had also placed a wooden chock about I1/2" thick behind one of the rear wheels. As the last bundle of tin was being removed, the 'truck rolled backwards, pinning plaintiff against the loading platform, which was about chest high. While the testimony is somewhat conflicting, it would appear that the driver did not ask for any help in unloading the truck, and that Allen Joubert had not instructed plaintiff to do so.
The following additional facts are also established by the evidence. Allen Joubert is the son of Gilbert Joubert. Allen Jou-bert at one time did business as Plaisance Wholesale Grocery, but went bankrupt in 1954, whereupon Plaisance Wholesale Grocery as such was purchased by Gilbert Joubert. Thereafter Allen Joubert was employed by Gilbert Joubert. as manager of Plaisance Wholesale Grocery. Allen Jou-bert also had other business interests of his own. The truck in question was owned by Allen Joubert, but was used by Plaisance Wholesale Grocery, for which Plaisance paid for gas, oil, repairs and liability insurance premiums on the truck. Marquette Casualty Company issued its liability policy on the truck in the name of Allen Jou- *857 bert, d/b/a Plaisance Wholesale Grocery, the latter designation, of course, being an •error of fact. Allen Joubert carried no workmen’s compensation insurance. Security Insurance Company of New Haven was the workmen’s compensation insurance ■carrier for Gilbert Joubert, d/b/a Plaisance Wholesale Grocery, and had issued its poli■cy accordingly. The tin siding was purchased at a figure slightly above cost by Allen Joubert from Plaisance Wholesale 'Grocery, and the delivery was made as aforesaid by Marion Jackson, a long-time •employee of the Wholesale Grocery.
We will first take up the question of whether plaintiff is entitled to workmen’s compensation benefits plus penalties and attorneys’ fees. We cannot agree with defendant, Allen Joubert’s, contention that plaintiff’s act in assisting with the unloading of the truck removed him from the scope of his employment.
In the case of Rigsby v. John W. Clark Lumber Company, (La.App., 1 Cir., 1946), 28 So.2d 346, the employee was granted compensation although injured when voluntarily and in excess of his assigned duties attending to a broken telephone wire dangling on the employer’s premises. The court in that case stated:
“The test laid down can be said to be twofold. It must be determined •first whether the employee at the time of the accident was engaged about the employer’s business and not merely pursuing his own business or pleasure, and second, did the necessity of the employer’s business reasonably require the employee to be at the place of the accident at the time it happened.”
See also Alexander v. Insurance Company of the State of Pennsylvania, (La.App., 3 Cir., 1961), 131 So.2d 558, and cases cited therein.
In support of his contention that plaintiff was beyond the scope of his employment, the said defendant cites the cases of McKay v. Crowell & Spencer Lumber Company, (La.App., 1 Cir., 1939), 189 So. 508; Leckie v. H. D. Foote Lumber Company, Inc., (La.App., 2 Cir., 1948), 40 So.2d 249; Dimes v. Lassiter and Company, (La.App., Orl., 1927), 7 La.App. 16; and, Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19. We do not find those cases applicable to the case at bar chiefly because they involve acts of the employee clearly in the furtherance of his own personal affairs or for someone other than his employer.
With respect to penalties and attorneys’ fees, the defense set up as to the compensation claim is frivolous and without merit. We are of the opinion that the plaintiff in the instant case is entitled to $750.00 as attorneys’ fees.
The next questions for decision are whether the truck driver, Marion Jackson, was negligent, and whether plaintiff was contributorily negligent. In none of the briefs filed in the instant case do we find any authorities cited with respect to these two (2) questions. The district judge, in his written opinion, stated:
“The negligence of Marion Jackson was glaring, gross and flagrant, and the sole and proximate cause of this accident. His negligence consisting in, without a doubt, not having proper emergency brakes to hold the truck in position with the load it carried when the truck was parked; not putting the truck in gear, failing to block the wheels with heavy blocks when he knew or should have known the truck was on an incline, the front of the truck facing up the incline, and the rear of the truck down a portion of the incline; and he knew that the load of the truck had to be pulled out of the rear of the truck.
“Additionally, he was grossly negligent in permitting the motor of the truck to be running while being unloaded. This shows definitely, and it is in the rec *858 ord, that the truck was not in gear but in neutral.”
We find no manifest error therein.
In like manner, we do not feel that plaintiff can properly be held to have been con-tributorily negligent under the facts and circumstances of this case, principally because of the fact that the truck driver himself was working alongside plaintiff in the same relative position with respect to the rear of the truck and the loading platform. If the truck driver did not consider the situation unduly dangerous, he having control over the truck, plaintiff should not, we feel, be placed under any greater degree of caution.
Proceeding from the finding of negligence, th.e next question for decision is whether Marquette Casualty Company, the liability insurer of Allen Joubert, is liable to plaintiff for damages in tort. The evidence clearly shows that the Diamond-T truck belonged to Allen Joubert and was insured by Marquette. It is also clearly established that the driver, Marion Jackson, was employed by and acting within the scope and course of his employment for Gilbert Joubert, d/b/a Plaisance Wholesale Grocery. It is further established that Plaisance Wholesale Grocery, through Marion Jackson, its employee or agent, was using the truck with the permission of its owner, Allen Joubert. A reading of the omnibus clause of the policy defining the word “insured” leaves no doubt that Marion Jackson was insured thereunder, in that it defines the word “insured” as including, inter alia, any person or organization using the vehicle with the permission of the named insured.
Defendant, Marquette Casualty Company, contends, however, that, due to the close relationship between Allen Joubert and Gilbert Joubert, Marion Jackson, was, in fact, an employee of Allen Joubert, a borrowed servant of Gilbert Joubert. In support of that contention, the said defendant relies principally on the cases of Humphreys v. Marquette Casualty Company, 235 La. 355, 103 So.2d 895 and Lynch v. Culpepper, (La.App., 2 Cir., 1957), 96 So.2d 516. We note, however, that in both of those cases, the employee actually did the work of the borrowing employer; in the Humphreys case, leaving the regular employment of ranching to go work on a rice farm; and in the Lynch case, supra, delivering a malted milk for one of two drug store partners who operated a soda fountain of his own separate from the partnership.
In the instant case, Marion Jackson was delivering for Plaisance Wholesale Grocery. He did not take any part in the carpentry work in which plaintiff was engaged, so as to come within the facts of the Humphreys and Lynch cases, supra. The sale of the tin siding by Plaisance to Allen Joubert was a valid transaction, the invoice being in the record. The material was paid for, as established by uncontradicted testimony. In other words, Plaisance made a sale and delivered the materials sold. Those facts are not altered by the circumstances that the seller and buyer were father and son; that the son was manager of his father’s business; and, that the son was owner of the truck used by his father.
With respect to the liability of defendant, Gilbert Joubert, d/b/a Plaisance Wholesale Grocery, to plaintiff for damages in tort, the evidence clearly establishes that Gilbert Joubert’s employee, Marion Jackson, was within the course and scope of his employment, thus making the employer responsible for his negligent acts. LSA Civil Code of Louisiana, Article 2320. Thus, the district court correctly held said defendant liable in solido along with Marquette Casualty Company.
With respect to defendant, Allen Joubert’s, third party demand against Marquette Casualty Company for attorneys’ fees, we note that the record contains no evidence on that question and that no mention is made of it in any of the briefs filed. This demand was apparently based on the *859 provisions of LSA-R.S. 23:1103 that an employer could recover from a tort-feasor “a reasonable attorney’s fee” in addition to reimbursement of any compensation actually paid. However, LSA-R.S. 23:1103 was amended by Act 109 of 1958 so as to permit the employer recovery only of compensation actually paid.
The final question for decision is that of quantum. Dr. D. J. DeBlanc, a general practitioner, was plaintiff’s attending physician. He first saw plaintiff on the day of the accident and was still treating him periodically at the time of trial in December, 1961. He testified that in the accident, plaintiff had sustained a com-minuted fracture of the right scapula or shoulder blade, which was well aligned and did not require setting; contusions of the chest wall; pleurisy and maceration or crushing of the muscles in the chest wall. In a deposition taken in May, 1961, Dr. De-Blanc stated that he felt plaintiff was able to do manual labor, with a possibility of some amount of residual disability. On the trial, however, he testified that plaintiff was still suffering pain and disability “on an off and on basis”. The doctor testified further that, initially, there was quite a bit of atrophy in plaintiff’s right arm and shoulder, but that, through exercise, that condition had returned to normalcy, although he felt plaintiff still had “a residual disability”. He felt that time and exercise would redevelop the injured site to a degree that he had no way of specifically determining at the time of trial.
Plaintiff was examined by Dr. Joseph M. Edelman, a neurological surgeon, on April 4, 1961. It was his opinion, at that time, that plaintiff was not disabled and was capable of returning to his usual occupation.
Plaintiff was also examined by Dr. William L. Meuleman, an orthopedic surgeon, on March 27, 1961. It was his opinion that plaintiff showed excellent use of his shoulder with no atrophy, and that he was able to do manual labor. He stated further that it was quite likely that, upon returning to work, plaintiff would experience a fatigue-type pain or aching sensation, but nothing severe or disabling, and that within four (4) months he should be completely symptom free. He felt further than plaintiff’s muscle tissues had returned to normal at the time of his examination. Dr. Meule-man stated:
“In the fracture,' such as this man sustained and allied fractures where they are clean-cut, the possibility of residual disability is very, very limited and very rare.”
For his damages in tort, the district court awarded plaintiff $9,763.00, including medical expenses incurred of $1,332.70, apparently allowing $8,430.30 for loss of earnings and pain and suffering. The record does not reveal exactly how the latter figure was arrived at. Plaintiff testified that his total earnings from farming, construction work, hauling garbage and other odd jobs amounted to $6,000.00 yearly. While that amount of income was not specifically proven in all aspects, neither was it seriously contradicted, and from the evidence taken as a whole, we feel that the figure is at least representative. Two of the three doctors who examined plaintiff felt that his disability had ended as of March or April 1961, some nine to ten months following the accident. The district court allowed one year’s disability in awarding workmen’s compensation benefits for fifty-two weeks. If the district court gave plaintiff credit for the $6,000.00 annual income he claimed, it is thus apparent that it also allowed some $2,400.00 or more for pain and suffering. Considering all of the evidence, medical and otherwise, we find no manifest error in that judgment.
With regard to plaintiff’s claim for future medical expenses, plaintiff and his attending physician, Dr. DeBlanc, testified on the trial that plaintiff was still reporting to Dr. DeBlanc on occasion, but the evidence is not precise enough as to purpose, dates or amounts to warrant an award for *860 future medical expenses sought by plaintiff. Dr. DeBlanc also testified that there was no further active treatment to give plaintiff. The preponderance of the medical evidence indicates that no such treatment is needed.
For the reasons assigned, the judgment of the district court is amended so as to assess defendant, Allen Joubert, with penalties of 12% upon unpaid compensation and attorney’s fees in the amount of |750.00, and as thus amended, the judgment of the district court is affirmed at the. costs of appellants.
Amended and affirmed
On Application for Rehearing.
En Banc. Rehearing denied.