NORBERT A. GRESSER v.
LESLIE TAYLOR AND OTHERS.

150 N. W. (2d) 869.

May 5, 1967—No. 40,362.

*Ryan, Kain & Kressel* and *James J. Moran*, for appellant.

*Carroll, Cronan, Roth & Austin* and *George S. Roth*, for respondent Albany Golf Course.

*Quinlivan, Quinlivan & Williams, Gerald Williams*, and *John E. Simonett*, for respondents Taylor.

SHERAN, JUSTICE.

Appeal from a district court's order denying plaintiff's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

Norbert A. Gresser sued Leslie Taylor, Mrs. Leslie Taylor, and Albany Golf Course, a Minnesota corporation, for injuries sustained when the Taylors' automobile, having rolled from its parked position and down a hill, struck the plaintiff while he was on the golf course. At the close of plaintiff's case, the trial court directed verdicts in favor of all defendants. Post-trial motions having been denied, our review on appeal begins with this summary of the evidence:

On August 20, 1961, defendant Albany Golf Course conducted a tournament on its premises. An admission fee was charged. Adjoining Albany Golf Course is a public street. It is located along the crest of a hill overlooking the golf course. On tournament days the custom has been that people park perpendicular to the edge of the street rather than in the usual parallel way. Defendant Leslie Taylor arrived at the golf course about 7:30 or 8 a. m. the day of the tournament as a passenger in a friend's car. The driver was directed into a perpendicular space on the golf-course side of the street by a person they assumed to be a parking attendant, who motioned the driver to pull up further onto the ridge of the hill overlooking the golf course. But he refused to do so. Even as parked, it was considered that the car's location was

"just a little bit too dangerous," so the emergency brake was set and the rear wheels blocked with rocks. The front end of this car as parked was lower than the back end, and the front wheels of the other cars parked before this one were even closer to the golf course property than it was.

Plaintiff arrived about 8:30 a. m. to participate in the tournament. He noted that there were already many cars parked on the golf-course side of the street. A person with a stick or cane motioned him to park on the opposite side and he did so. He entered the golf course by way of some wooden steps commencing at the end of the line of cars parked on the golf-course side of the street. But he noticed nothing about the way these cars were parked which caused him concern.

Mrs. Taylor arrived at the golf course about 1:30 p. m. She then parked about two blocks away. Shortly thereafter she left the golf course, returning about 2 p. m. This time she parked perpendicular to the golf course several cars from the wooden steps and four or five cars from where her husband's friend had parked. She was not directed to do so and observed no one in the area who appeared to be in charge. She testified that she drove the car into the parking place; stopped it so that the front of her car was even with that of the next one; put the car in reverse gear (it was a manual transmission); set the emergency brake; sat for a short time; and stepped on the brake again, depressing it about an inch further so that it was down as far as it would go.

She discussed with her passenger the potential danger of parking in this position. She recognized the hazard and said she would not have parked there at any other time, being conscious as she parked that there was a dip or depression bespeaking danger, particularly since the first tee was right below the steep hill in front of the car. But she did not look for anything with which to block the wheels. She thought the brakes would hold the car.

It is probable that the car was parked completely upon the public street but not more than a couple of feet from the golf course property line. When asked whether the ground upon which the car was parked was relatively flat or whether the front end was up slightly or

down slightly, she answered, "Well, I think it was more level than anything."

She thought she left the car with the window up but was not sure. She did not lock the doors.

The Taylors had owned the car in question for some time.[1] Mrs. Taylor drove another car more often than this one. The other car had an emergency brake which was pulled with the left hand; she could not recall how it was released. She stated that the emergency brake on the car involved in the accident was set by stepping on it with one's left foot and released by pulling a little handle. She did not recall braking this car on hills before but she had used its emergency brake. She said she had not confused the braking system on this car with that on the other. Her husband showed her how to drive the car involved in the accident and they both read the instruction book that came with it. The instruction book says that to set the emergency brake one should "[a]t the same time depress foot brake to assist setting the parking brake and maintain the applied pressure until brake holds." Mr. Taylor testified that one could apply the emergency brake "just as fully by stepping on it without stepping on the foot brake."

At about 5 p. m. plaintiff walked over to the number one tee where there was a wooden bench. He sat on the back of it with his feet on the seat. A short time later, without warning, he was struck from behind and thrown about 40 feet by the Taylors' car. He was injured as a consequence.

A witness who saw the car just before it hit plaintiff noticed that there was a young boy running or stumbling ahead of it. When the Taylors reached the car, the door on the driver's side was open. A witness recalled that at this time the window on the driver's side was down. There were no marks indicating that the car had been struck from the rear. Mr. Taylor testified that when he got into the car the brake release was bent up over the cowl so that he had to straighten it out before the brake could be released. The tracks leading up the hill appeared to be of rolling tires; there was no digging in or scuffing of

---

[1] Mrs. Taylor estimated they had had it about 10 months, but Mr. Taylor indicated they had had it about 21 months.

the grass to indicate the wheels had been locked as the car came down the hill.

The only questions on appeal are whether on the above facts jury questions were presented as to liability on the part of the golf course and on the part of the Taylors.

■ A jury could have found the golf course liable.[2] Plaintiff, who had paid to participate in the tournament, was a business invitee. Restatement, Torts (2d) § 332; see, Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803 (picnic for which admission fee was charged); Lowe v. City of Gastonia, 211 N. C. 564, 191 S. E. 7 (golf course). Because of this, the golf course, operating a place of public amusement, owed a duty to protect him from dangers it should have expected he would fail to discover, appreciate, or guard against, including not only dangers of which it was aware but also those which in the exercise of reasonable care it should have discovered. Restatement, Torts (2d) § 343.

This duty included protecting plaintiff from harm caused by the accidental, negligent, or intentionally harmful acts of third persons and by its failure to exercise reasonable care to discover that such acts are being done or are likely to be done. Restatement, Torts (2d) § 344; Mastad v. Swedish Brethren, *supra*. It had a duty to use reasonable care to protect plaintiff from such acts of third persons even though the acts were committed outside the golf course's premises. Restatement, Torts (2d) § 344, comment *b*.[3]

A business proprietor may be held liable for failing to prevent injury from a car rolling down a hill. Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S. W. (2d) 995 (service station's failure to check whether car patron left for service was properly secured). Cf. Yates v. Williams (La. App.) 32 So. (2d) 505.

---

[2] It does not appear on the present record that plaintiff carried his burden of proving that the person or persons who directed plaintiff and Mr. Taylor's friend into parking spaces were agents of the golf course, so plaintiff's claims based upon that theory will not be considered here.

[3] Restatement, Torts (2d) § 363, cited by defendant golf course, is clearly inapplicable. It states that one is not liable for harm caused to others *outside of the land* by a natural condition of the land.

The present case is very similar to Marquardt v. Cernocky, 18 Ill. App. (2d) 135, 151 N. E. (2d) 109, 67 A. L. R. (2d) 956, in which a paying patron of a picnic grounds was injured when struck by a car which moved from its parked position down a hill. When the driver of the car had arrived, an employee of the picnic grounds at the gate generally directed him to park on the hill, a natural condition of the terrain, but no one was supervising the actual parking of automobiles. The driver testified he parked the car on a flat patch of ground, turned off the ignition, and put the car in reverse to hold it in place. He did not set the hand brake. Other evidence indicated the spot where he parked was not level. It appeared that, unknown to the driver, his young daughter returned to the car and moved the gearshift lever to neutral whereupon the car rolled down the hill and struck plaintiff. The court held that upon this evidence the jury was justified in holding the picnic grounds proprietors liable on the ground that with full knowledge of the conditions of the area and its occupancy by patrons and automobiles they did nothing to supervise parking or to provide safety barriers of any type. The court stated that it was common knowledge that operators of parking lots, particularly those located upon sloping ground, utilize fences, logs, railroad ties, cement barriers, and the like to keep parked autos in a safe position. The court held that the acts of the driver and his small daughter were not efficient intervening causes because they were foreseeable.

The only distinction of any significance between the Marquardt case and the present one is that here the car was parked upon a public street rather than upon defendant's premises. One case has been found which treats such a factor as significant. In Cain v. Stevens (Ky. App.) 274 S. W. (2d) 480, the jury returned a verdict in favor of defendant owner of a restaurant and against a plaintiff who was injured while reclining on land near a river outside the restaurant building when a car parked along a public road in an area where defendant's customers customarily parked broke loose, plunged over the river bank, and struck plaintiff, throwing her into the river. Plaintiff appealed on grounds of erroneous instructions. The court affirmed upon three alternative grounds: (1) The instructions were not erroneous; (2) had

they been erroneous, they would not have been prejudicial because any negligence on the part of defendant was not a proximate cause of the accident; and (3) defendant had not been even remotely negligent in that "we know of no rule of law that requires a property owner to so immure the periphery of his property that it is made impregnable to violations by the negligent acts of a third party, or is rendered an absolute sanctuary of safety for everyone who is present on his premises." 274 S. W. (2d) 483. The precise facts as to the position of the parked car and the physical layout of defendant's premises do not appear in the Cain opinion. If the court in its third alternative ground meant only that a business proprietor is not an insurer and is not required to take steps which it appears as a matter of law that a reasonable person would not take, we would agree. See, Mack v. McGrath, 276 Minn. 419, 150 N. W. (2d) 681, filed herewith; Briglia v. City of St. Paul, 134 Minn. 97, 158 N. W. 794, L. R. A. 1916F, 1216. But if the court in the Cain case meant to say that a business proprietor can never be liable to an invitee for failing to protect him from being struck by a car which came loose from its parking place adjacent to the premises, we disagree.

As previously noted, Restatement, Torts (2d) § 344, comment $b$, states that the business proprietor may be liable for failure to use reasonable care to protect invitees from the negligent acts of persons outside the premises. This principle has been applied even where the injury occurred outside the business premises. See, Viands v. Safeway Stores, Inc. (D. C. Mun. App.) 107 A. (2d) 118, and cases cited (failure to warn of obstructions outside the door). Here, the injury occurred upon the premises. The premises themselves were made hazardous, albeit by reason of something from the outside.

An analogous situation in which liability has been found is where a person riding on a train is injured by reason of rocks sliding or falling onto the railroad's premises. See, Blessing v. Camas Prairie R. Co. 3 Wash. (2d) 266, 100 P. (2d) 416; Annotation, 34 A. L. R. (2d) 831. A possessor of premises who knows or should know of the hazard of persons falling upon a slippery substance may be liable even though the harm-producing substance is brought onto his premises by others.

See, Taylor v. Northern States Power Co. 192 Minn. 415, 256 N. W. 674; Id. 196 Minn. 22, 264 N. W. 139; Annotations, 62 A. L. R. (2d) 6 and 131.

The golf course is not aided by the possible rule that a proprietor may not be held to a duty of actively inspecting land outside its premises (Thomas v. Monongahela Valley Traction Co. 90 W. Va. 681, 112 S. E. 228) because there was in the present case sufficient evidence to show it should have been on notice as to the hazard. The topography was plainly observable. The testimony of Mr. Taylor's friend and of Mrs. Taylor herself as to the concern they felt at leaving their cars parked as they were also provides evidence to support a finding that the golf course should have perceived the danger. See, Blessing v. Camas Prairie R. Co. *supra,* where liability for injuries due to a rock-slide was upheld although during the entire existence of the railroad— about 30 years—it had never had any trouble with earth or rocks sliding onto its tracks at the scene of the accident.

Nor does it appear from the evidence that any measures sufficient to prevent the accident would have involved expense or obstruction to pedestrian movement out of proportion to the anticipated risk. Cf. Mack v. McGrath, 276 Minn. 419, 150 N. W. (2d) 681;[4] Briglia v. City of St. Paul, 134 Minn. 97, 158 N. W. 794, L. R. A. 1916F, 1216;[5] Le Deau v. N. P. Ry. Co. 19 Idaho 711, 115 P. 502, 34 L. R. A. (N. S.) 725.[6] As noted in Marquardt v. Cernocky, *supra,* it is com-

---

[4] In the Mack case a driver attempting to park perpendicular in defendant's shopping center negligently allowed her foot to slip off the brake onto the accelerator, causing her car to jump the normally constructed curb and crash into a business establishment where it struck plaintiff. The court held that to build a barrier sufficient to have prevented the accident would have involved an expense and an obstruction and hazard to pedestrian traffic completely out of proportion to the anticipated risk.

[5] In the Briglia case, plaintiff's decedent *backed* across a boulevard which ran along a river, over a gutter and gravel path raised about 6 inches above the gutter, and down the bluff into the river. The court stated that the roadway, gutter, and path afforded protection against ordinary deviations from the traveled road and held that reasonable care did not demand the provision of barriers sufficient to prevent an accident such as that which occurred.

[6] In the Le Deau case the court held that because of the prohibitive expense

mon knowledge that business proprietors of lands where parking is done, particularly where cars are parked upon sloping ground, utilize fences, logs, railroad ties, cement barriers, and the like to keep the parked cars in a safe position. Here apparently we do not have the factor emphasized in Mack v. McGrath, *supra*, of obstruction and hazard to pedestrian movement in that normal access from the parking area to the golf course was by means of the aforementioned wooden steps. Nor does it appear as a matter of law, as it did in the Mack and Briglia cases, that any precautions the proprietor would reasonably have taken would have been insufficient to prevent the accident. Here, the car in question was parked—in the cases cited it was being accelerated. Here no barrier was constructed—in the cases cited normal precautions had been taken. See, Blessing v. Camas Prairie R. Co. *supra.*[7]

■ The court also erred in taking the case from the jury as to the Taylors. The selection of a parking place in itself may be negligence when the auto is left in a spot where there is an undue risk of its accidentally starting up. Annotation, 16 A. L. R. (2d) 979, 1001. In this connection it is relevant that defendant chose the parking space she did rather than utilizing another available one free of danger. See, Fone v. Elloian, 297 Mass. 139, 7 N. E. (2d) 737; cf. Larson v. Montpetit, 275 Minn. 394, 147 N. W. (2d) 580, and cases cited. Under certain circumstances, it may be negligent to fail to block the wheels of one's vehicle. See, Malone v. Plaisance Wholesale Grocery (La. App.) 146 So. (2d) 853.

The situation where a parked automobile runs away and works injury is universally viewed as one for the application of res ipsa loquitur,

---

thereof, a railroad company in a mountainous area is not bound to construct retaining walls all along the boundary of its right-of-way to prevent rocks from falling thereon.

[7] In Blessing it was held that a railroad may be found bound to maintain a ditch along its tracks to catch and retain material which might slide down the hill onto its tracks and that the question whether the slide was of such proportions that a reasonably constructed and maintained ditch would have prevented the rock slide from covering the tracks was for the jury.

Borg & Powers Furniture Co. v. Clark, 194 Minn. 305, 260 N. W. 316, and the majority view is that the mere testimony of the driver that he took all possible and reasonable precautions in parking the vehicle does not necessarily overcome the effect of the inference. See, Lewis v. Wolk, 312 Ky. 536, 228 S. W. (2d) 432, 16 A. L. R. (2d) 974; Annotation, 16 A. L. R. (2d) 979, 982, 991; cf. Rinkel v. Lee's Plumbing & Heating Co. 257 Minn. 14, 99 N. W. (2d) 779.[8]

Defendants Taylor assert that the doctrine of res ipsa loquitur cannot apply in the present case because of the 3-hour lapse of time between the parking of the car and the accident. They contend that it appears as a matter of law that this time lapse shows the accident was not the result of negligently parking the car because if the car had been improperly parked it would surely have become dislodged before 3 hours had elapsed. There are several cases which indicate that the showing of a considerable time lapse disables plaintiff from relying upon res ipsa loquitur. See, Joseph v. Schwartz, 128 Wash. 634, 224 P. 5 (5 or 6 hours). Buzzello v. Sramek, 110 Neb. 262, 193 N. W. 743 (10 to 20 minutes), probably supports defendants' position although it is somewhat distinguishable in that there the driver's testimony as to properly securing the car was corroborated by other witnesses. Morton v. Davies, 95 Ga. App. 839, 99 S. E. (2d) 321, is distinguishable in that there was a 2-hour time lapse coupled with evidence that the car moved because a mechanic, attempting to pull the hood release lever, may have negligently pulled the brake release instead. Spurlin v. Richardson, 203 Va. 984, 128 S. E. (2d) 273, involving a 2-hour time lapse, is perhaps distinguishable because there it appeared conclusively

---

[8] It may be otherwise where there is *nothing* to cast doubt upon such testimony, Segal v. Bloom Brothers Co. 249 Minn. 367, 82 N. W. (2d) 359, but in some cases the mere fact the accident occurred raises inferences strong enough to cast such doubt. See, Rinkel v. Lee's Plumbing & Heating Co. 257 Minn. 14, 99 N. W. (2d) 779. In the present case there are other factors which cast such doubt—the fact the testimony was given by an interested party, the fact that the witness was confused as to the operation of the brake release on the car which she drove more often than the car in question, and the fact that the brake release lever was bent as if it had been pulled by someone who thought that such lever set rather than released the brake.

that the brakes were properly set and were not defective and (although there was no direct evidence of it) it was considered as likely that the vehicle was set in motion by the children who were playing on it as by any negligence of defendant. Hughes v. Jolliffe, 50 Wash. (2d) 554, 313 P. (2d) 678, is distinguishable in that there was not only a 2-hour time lapse, but it was clear that in the meantime the car had been shifted from "park" to "neutral."

Although intervening time is no doubt a factor to be considered by the jury, [9] Gorfain v. Gorfain, 118 Conn. 484, 172 A. 924, we believe the time lapse under the circumstances of this case was not a sufficient ground for directing a verdict for defendants. See, Price v. McDonald, 7 Cal. App. (2d) 77, 45 P. (2d) 425 (6 hours); Landrum v. United States Fidelity & Guaranty Co. (La. App.) 151 So. (2d) 701 (20 to 30 minutes); Litos v. Sullivan, 322 Mass. 193, 76 N. E. (2d) 557 (5 hours); Bacon v. Snashall, 238 Mich. 457, 213 N. W. 705 (1 hour); Vaughn v. Meier (Mo.) 246 S. W. 279 (10 to 45 minutes); Shepherd v. United States Fidelity & Guaranty Co. 233 S. C. 536, 106 S. E. (2d) 381 (1 hour).

Although there is no evidence so indicating, the car may have been set in motion by being struck or bumped by another car. Such a cause would not necessarily insulate the Taylors from liability. See, Fulcher v. Rowe, 78 Ga. App. 254, 50 S. E. (2d) 378; Elliott v. Seattle Chain & Mfg. Co. 141 Wash. 157, 251 P. 117.

Defendants Taylor assert that it appeared the car was set in motion by the act of some third person, probably a child, in releasing the emergency brake. No evidence appeared showing that any third person had been in the car prior to its descent of the hill, or even to show that anyone had been in the vicinity of the automobile at that time. The following are closest to such evidence: A statement of one of the witnesses that there were some people on the *side* (not the top) of the hill; there were said to be three or four boys aged about nine or ten around and running in front of the bench, which would be a con-

---

[9] In Peavey v. Mutual Realty Corp. 82 Cal. App. 542, 255 P. 858, the plaintiff's witness testified that brakes may loosen as the brake bands cool off.

siderable distance from the car; according to a witness who saw the car coming down the hill *just before it hit plaintiff*, there was a boy running or stumbling *in front of* the car. On this evidence it would not have been necessary for the jury to find that the car was set in motion by a third person releasing the brake. Even where there has been a substantial time lapse, a verdict for plaintiff should not be reversed upon mere conjecture that some intervening cause, such as a prankster, set the car in motion. See, Shepherd v. United States Fidelity & Guaranty Co. 233 S. C. 536, 106 S. E. (2d) 381.

The evidence does not show whether anyone entered defendant's car after it was parked.[10] But, if the car's movement was caused by someone releasing the brake, moving the gearshift lever, or both, our prior cases (Kalberg v. Anderson Bros. Motor Co. 251 Minn. 458, 88 N. W. [2d] 197, and Anderson v. Theisen, 231 Minn. 369, 43 N. W. [2d] 272) holding that an owner or his agent who leaves the ignition in his car unlocked is not liable for injuries caused by the negligent driving of a thief are distinguishable on the ground that the cases cited involved intervention by means of a serious crime. In the present situation where the car doors were left unlocked in proximity to a crowd of people including children, the intervention was to some degree, perhaps, more foreseeable. See, Marquardt v. Cernocky, 18 Ill. App. (2d) 135, 151 N. E. (2d) 109, 67 A. L. R. (2d) 956.[11]

Reversed and remanded.

Peterson, Justice (dissenting in part).

I respectfully dissent as to defendants Taylor and concur in the result as to defendant Albany Golf Course for reasons which I only briefly suggest.

---

[10] In a case where the time lapse was short, a directed verdict for defendant has been reversed despite the fact there was some direct, albeit rebutted, evidence that a child had been meddling with the vehicle. See, Oberg v. Berg, 90 Wash. 435, 156 P. 391.

[11] Defendants Taylor attempt to distinguish the Marquardt case in that the defendant therein was the owner of the premises. However, it seems that if a child's intervention would not insulate the owner's negligence, it would not insulate the driver's.

The main thesis in imposing liability upon the Taylors appears to be that a prima facie case, otherwise absent, was established by the doctrine of res ipsa loquitur. The trial court by directing verdicts for the defendants at the conclusion of plaintiff's case obviously held the doctrine inapplicable, for that was plaintiff's case. The inference which the doctrine permits presupposes that the evidence of the true cause of the event is available to the defendant and not to the plaintiff, Heffter v. Northern States Power Co. 173 Minn. 215, 217 N. W. 102, which is not the case here; further, other causes of the event and for which defendant is not responsible (including the conduct of third persons) must be reasonably ruled out by the evidence, Restatement, Torts (2d) § 328D, which most particularly is not this case.

It is unquestioned that the emergency brake was not set at the time the automobile rolled down the hill and that it would not have occurred had the brake been set. The uncontroverted testimony of Mrs. Taylor was that she had probably set the brake, as was her habit. The undisputed fact that the Taylor car remained stationary for more than 3 hours is of massive significance in suggesting the truth of her testimony. The fact that the brake handle was bent up over the cowl does not reasonably suggest to me that *she* unwittingly had attempted, but failed, to set the brake in that extraordinary manner; rather, it is a far more reasonable inference that the brake was released by someone unfamiliar with the car and who, as the car began to move, clumsily and desperately attempted to reset it. The testimony is uncontroverted, moreover, that the door on the driver's side was open and the window down when the car came to rest at the bottom of the hill, whereas she testified that the window was probably up and the door was certainly shut when she parked the car 3 hours earlier. The testimony of an independent witness established that there were several children playing in the immediate area of the car, significantly including one child observed to be running or tumbling ahead of the car as it came down the hill.

The case of defendant Albany Golf Course does perhaps present a question for determination by a jury on one issue. The majority holds that the golf course could have simply and inexpensively erected bar-

riers to prevent cars, from whatever cause, rolling down the hill into patrons of the golf course. This would undoubtedly be true *if* any of the street level property available for such installation is the private property of the defendant golf course. Otherwise, the defendant's only alternative would be to install a barrier on the steeply sloping private property of the golf course and of such construction as to stop a car already in motion, an alternative which a jury might find not to be simple or reasonable. This issue of reasonable alternatives was of crucial importance in Mack v. McGrath, 276 Minn. 419, 150 N. W. (2d) 681, cited in the majority opinion.