MERCHANTS AND FARMERS MUTUAL CASUALTY COM-PANY v. SAINT PAUL-MERCURY INDEMNITY COMPANY.[1]

November 3, 1944.

No. 33,862.

[1]Reported in 16 N. W. (2d) 463.

*Faegre & Benson, Paul J. McGough,* and *John A. McEachron, Jr.,* for appellant.

*Charles H. Weyl* and *Don V. Hinrichs,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Plaintiff brings this action to recover from defendant one-half the amount plaintiff was required to pay as liability insurer on a policy of automobile insurance issued to and covering the car of Jennie Schullo. Plaintiff's original liability accrued as the result of an action brought against Mrs. Schullo and her son, Millard, by one John A. Berglund, for injuries sustained when the latter was struck by the Schullo car.

This is the second trial of the action. The first was held in April 1942. At the close of the testimony at that trial the court directed a verdict for defendant. On April 2, 1943, this court reversed the order of the trial court (Merchants & Farmers Mut. Cas. Co. v. Saint Paul-Mercury Ind. Co. 214 Minn. 544, 8 N. W. [2d] 827), holding that the issues should have been presented to a jury for determination.

The second trial took place in January 1944. At the close of the testimony therein the trial court submitted the issues to the jury, which returned a verdict for plaintiff.

Thereafter defendant's alternative motion for judgment or a new trial was denied on April 3, 1944. Subsequently the trial court

ordered the case reopened, permitted the settled case to be supplemented, and allowed defendant to amend its alternative motion to include the following additional ground for new trial: "Irregularity on the part of the court in commenting upon counsel's questioning of the witness Mrs. Jennie Schullo." This amended motion for judgment notwithstanding the verdict or a new trial was denied on May 1, 1944. The appeal is from both orders.

On December 26, 1940, defendant, through its agents, Barney & Barney, of Minneapolis, issued a standard automobile policy to Mrs. Schullo. About January 31, 1941, one of its agents called upon the insured and informed her that defendant would not carry the risk unless the policy were endorsed to eliminate coverage for Frank Schullo, son of the insured, who had been convicted of a traffic violation. The insured would not consent to the change and was granted a few days by the agent to obtain another policy. It was agreed that she would call him when she had obtained the new policy, at which time he would come and pick up the old policy.

On February 4, 1941, plaintiff issued its policy to Mrs. Schullo. Four days later she called Frank H. Barney, defendant's agent, and told him that she had other insurance and to send over the premium on the first policy and she would deliver it to him. After a discussion as to the amount of the refund to be paid, Mr. Barney, Sr. directed Mr. Barney, Jr. to take the money over to Mrs. Schullo and pick up the policy. This was on a Saturday, but, for reasons personal to himself, Mr. Barney, Jr. did not then attend to the matter. On the following Monday morning the accident occurred involving the insured's automobile. Mrs. Schullo notified both companies of the accident. The Barneys then tendered her the premium and asked her to surrender the first policy. She declined to do this. Defendant refused to defend the action against her, and plaintiff subsequently paid the judgment obtained against her as required by the terms of its policy. Plaintiff then brought this action to recover one-half its loss, including one-half the expense incurred in the defense of the action against Mrs. Schullo.

■ Again the sole question presented is whether the telephone conversations between defendant's agent and the insured effected a rescission of the contract by mutual agreement as of the date thereof. In our first decision we held that upon the evidence then presented it became a question of fact for the jury to determine whether the parties intended a cancellation or a rescission as of that time and that the court erred in directing a verdict on that issue. Our ruling there became the law of the case on the second trial. The trial court recognized this and, in denying defendant's motion, commented as follows:

"The Supreme Court of this state, in a prior decision between the same parties, granted a new trial because the lower court directed a verdict in favor of defendant. This court therefore followed that decision and submitted the case to the jury with the result that plaintiff obtained a verdict. In my judgment the evidence is no stronger in favor of the defendant in this case than it was in the other case. Hence this order."

It is clear that unless the evidence in the second trial established facts conclusively favorable to defendant on the principal issue, the court was correct in denying defendant's motion for a directed verdict. Counsel for defendant vigorously contends that the evidence presented at the second trial did conclusively establish cancellation by mutual consent as a matter of law. In support of this contention he cites the testimony of Mrs. Schullo in part as follows:

"Q. On Saturday, February 8th, you told Mr. Frank Barney, Sr., that you had another insurance policy that gave protection to Frank?

"A. Yes, sir.

"Q. The new policy would replace the one that you had in the St. Paul-Mercury, isn't that true?

"A. That is right.

"Q. You told him that he could come and get the St. Paul-Mercury policy?

"A. That is right.

"Q. Mr. Frank Barney, Sr., told you that day that his nephew, Fred, would stop in at the store and pick up * * * the St. Paul-Mercury policy, and if Fred had come into your store on Saturday, February 8th, you would have delivered this * * * to him, would you not?

"A. That is right.

\* \* \* \* \*

"Q. You still had it on Monday morning, February 10th, when your son Millard had the accident with Mr. Berglund?

"A. That is right.

"Q. On Saturday, February 8th, it was not your intention to continue to have two automobile insurance policies, was it, * * *?

"A. No.

"Q. You were only going to carry one policy on that Ford automobile?

"A. That is right.

\* \* \* \* \*

"Q. On Saturday, February 8th, the policy that you intended to carry was the Merchants and Farmers policy, * * * is that right?

"A. Yes.

\* \* \* \* \*

"Q. But because Fred Barney, Jr., did not come around, you had possession of both of these policies on Monday, February 10th?

"A. That is right."

While true that this testimony standing alone might support a finding that the first policy was cancelled effective with the procurement of the second policy and notification to defendant thereof, there are other portions of the testimony of Mrs. Schullo which cause us to conclude now, as we did in the prior case, that this issue was properly one for the jury. Mrs. Schullo also testified:

"A. I think it was the Saturday after I got the other policy I called him up to bring back the money and you can have your policy.

\* \* \* \* \*

"Q. Was there any other talk with you that you remember; did you have a discussion about premium; how much he would send over?

"A. We had an argument over the fee. I didn't think I was supposed to pay anything for that month as long as they did not want me to have the policy; * * *. They said, oh, yes.

"Q. Did you know, when he said he would send over the money that day, how much he was going to send to you?

"A. No, I didn't.

"Q. Did you receive money that day?

"A. No.

* * * * *

"A. * * * Mr. Barney said: 'Your policy is not any good any more.' I said: 'Oh, yes, that policy is good as long as I have it here.'

"Q. What did you tell him when he said that policy was no good; what did you say to him?

"A. I said: 'You were supposed to pick it up Saturday and you didn't, and so the policy is good.'

* * * * *

"A. * * * He said: 'We are not liable.' I said: 'Oh, yes, you are liable, I still have the policy.'

* * * * *

"Q. Was there anything said by Mr. Frank Barney as to when he would send the money up to you?

"A. That same day.

"Q. That same Saturday?

"A. Yes."

This testimony gives support to plaintiff's contention that the parties did not intend to cancel the policy until payment of the return premium. Likewise, the testimony of Mr. Barney, Sr. would seem to indicate that he did not regard the policy as cancelled until full payment of the return premium due Mrs. Schullo. He testified:

"A. I said: 'Mrs. Schullo she has our policy, and has another policy and *wants to cancel our policy,* and you go up and pick it up and pay the full return premium, I agreed with her to give her the full.'

"Q. You said *she wants to cancel the policy* and he should take the full return premium.

"A. Yes." (Italics supplied.)

Thereafter Mr. Frank Barney turned to his junior partner, Fred Barney, instructed him to get $42 from the bookkeeper, and pick up the Schullo policy on his way home.

We cannot escape the conclusion that the aforesaid testimony taken as a whole is substantially the same as that submitted at the former trial; that the jury might feel therefrom that Mrs. Schullo had no intention of rescinding the first policy until she had received back her full premium; and that accordingly no cancellation had been effected prior to the date of the accident.

■ Defendant, contending that the court committed prejudicial error in commenting on its counsel's cross-examination of Mrs. Schullo, asserts that the following proceedings took place in connection therewith:

"Q. These two other companies that did cancel their automobile insurance on this 1938 Ford did so because they did not like the way your son Frank was driving the automobile?—(hesitation)—If you do not understand the question let me know as I wish to be perfectly fair with you and give you ample opportunity to answer the questions.

"The Court: Yes, I know how fair you want to be. Answer the question."

In the settled case now here the above remark attributed to the court does not appear. On the contrary, it indicates that the court at that time stated: "Yes, I know you wish to be fair. Answer the question." The settled case as originally submitted did not contain either version of the court's remarks. Later it was supple-

mented to include the latter version of it, as above set forth, which version was corroborated by the court reporter.

No exception was taken to the remarks of the court either as alleged by counsel or as set forth in the settled case, and no reference thereto was made until after the hearing on the first motion. It was first brought to the court's attention in the second motion above referred to, after counsel for plaintiff originally had stipulated to a settled case which contained neither version of the remarks in question. Counsel for defendant in its brief states that "the defendant does not claim or even insinuate that Judge Parks has done anything to 'soften' his remark. Judge Parks accepts the version of the court reporter as it appears in the amended transcript."

If the court's remarks were what defendant now contends them to be, it would seem that exception thereto should have been taken by counsel at the time they were made. We have held that statements of counsel during trial cannot be made the basis of a new trial without objection or exception thereto taken at the time such statements were made, Seitz v. Claybourne, 181 Minn. 4, 231 N. W. 714, and the same rule should likewise be applicable to remarks of the court claimed to be prejudicial.

In any event, we are bound by the settled case as here submitted, particularly in view of the fact that it has the corroboration not only of the trial court but of the court reporter in the proceedings. We have held that a stipulation of the parties as to what took place at the trial cannot be substituted for a settled case or bill of exceptions unless approved as correct by the trial court. Abrahams v. Sheehan, 27 Minn. 401, 7 N. W. 822; Sherman v. St. P. M. & M. Ry. Co. 30 Minn. 227, 15 N. W. 239; Spriesterbach v. Schmidt, 64 Minn. 211, 66 N. W. 721; State ex rel. Yapp v. Chase, 165 Minn. 268, 273, 206 N. W. 396, 398. Here, we are compelled to accept the court's version of what took place as now incorporated in the amended settled case. Since this version could not have prejudiced defendant, we find no reversible error therein.

Affirmed.