GEORGE B. ZAIKANER v. HARRY W. SMALL.

98 N. W. (2d) 247.

July 24, 1959—No. 37,627.

*Carroll, Thorson, Anderson & Cronan* and *Robert M. Austin,* for appellant.

*William H. DeParcq, Robert J. Monson,* and *Robert N. Stone,* for respondent.

NELSON, JUSTICE.

The action here involved grows out of an automobile accident which occurred about 10 o'clock in the morning on Friday, April 27, 1956, on Highway No. 65 immediately to the south of the city limits of Cambridge, Minnesota. It appears that at the point where the accident occurred Highway No. 65 extends in a general northerly and southerly direction. The roadbed constitutes a straight two-lane highway, 22 feet in width and of concrete surface. The highway was dry at the time of the accident. The plaintiff, George B. Zaikaner, was driving a Chrysler in a northerly direction, accompanied by a guest passenger, Peter Mankowski, who was seated to his right in the front of his car. The defendant, Harry W. Small, was driving his 1950 Buick, with two dogs in the back seat and one in the front seat, in a southerly direction. The vehicles collided approximately head on and all three men were injured. The record indicates that the speed of both cars, shortly before the collision, was about 50 miles per hour. Plaintiff claims that the injuries which he received were due to the negligence of the defendant in the operation of his automobile and that the defendant's automobile crashed into and upon the automobile of the plaintiff. The defendant denied any negligence on his part and filed a cross-complaint for injuries suffered as a result of the alleged negligence of the plaintiff.

The guest passenger sued both plaintiff and defendant jointly for personal injuries resulting from the collision, and his action was consolidated for trial with the actions between plaintiff and defendant. Mankowski put in his evidence first but the Mankowski action was settled during the progress of the trial. The trial court informed the jury that settlement had been agreed upon between Mankowski and the plaintiff and that such settlement had automatically resulted in a dismissal of the action as to the defendant. Thereafter the trial was confined to the suits between plaintiff and defendant, resulting in a verdict in favor of defendant of $20,000.

It appears that prior to the accident defendant had been employed as principal of the junior high school at Virginia, Minnesota. The record is barren as to what his earnings were at any time. It shows that he was 67 years of age at the time of trial and that he had not returned to any field of gainful employment.

The record shows that the defendant had incurred a doctor's bill of $95; hospital bills of $508.65, $402.65, and $108; drug expense of $300; damage to clothing of $130; and depreciation of his automobile of $900.

The medical testimony disclosed that defendant had suffered lacerations on the head, a fracture of the third rib on the left side, a severe fracture of the left clavicle, and a fracture of the right humerus. He was hospitalized following the accident at Braham, Minnesota, for 2 weeks and later at Virginia for one month, after which period he was given physiotherapy treatments. It was also shown that defendant had been under treatment for a diabetic condition for approximately 14 years and that this condition affected his recovery period. The evidence shows that defendant had been pinned in his car resulting in the injuries of which he complains. He described the pain resulting as "excruciating in the shoulder, crashed in the arm, and most of all in the left clavicle, which proved later to have been or had ground out a large hole." A cast was put on his right arm at the Braham hospital, but they were unable there to do anything with the punctured hole in the left clavicle. First aid was administered to his face and the back of his head where he had been cut and injured. Frequent hypos became necessary because of shock and pain. He was informed while at Braham that his left shoulder was crushed; that the clavicle was punctured; and that the right arm was fractured from the shoulder to within about one inch of his right elbow. He became afflicted while at Braham with congestion in one lung. The cast on his arm was later changed at the hospital at Virginia and his shoulders braced involving an application of an apparatus which spread his shoulders and also braced them and which remained applied during the full period he was in the hospital at Virginia. He was assigned to the rehabilitation center before leaving the Virginia hospital, where he received hot water whirlpool treatments for his right arm and later exercises for both arms and the left

shoulder. This was done every day for one week and then three times a week for a period of several weeks. Those treatments commenced May 28, 1956, and continued through August 20, 1956. He was confined for many months to no activity of any kind beyond walking about the house. His testimony indicates that he was unable to drive a car after the accident. It shows that he had continuously suffered pain and was still suffering pain at the time of trial in his arms, shoulders, and especially in the left clavicle. While the fractures healed in good position, the record indicates that as permanent disability, secondary to the fractures, he sustained a 25 percent loss of motion of both shoulder joints and had lost the ability to close his hands and grasp objects firmly. Testimony of defendant indicates that his maximum recovery was reached about November 1957. Defendant testified as follows relative to his condition at the time of trial:

"I can only get, and with pain, my arm as I try to revolve it, as the doctor, even after I left rehabilitation, tried to get me to get my arm up. I would stand at a desk that I have at my home and he would keep saying, 'Now, put your arm up.' The top of that desk was up a little bit higher than I have my arm now. I put it up there to constantly put a bit of tension or strain upon that in an effort to improve the way in which I could circle that but I still find it very painful unless I rotate my body partially with it."

■ The plaintiff contends that the trial court erred in making the following statement to the jury:

"* *. * Ladies and Gentlemen: One reason for the delay this morning; during the week-end and culminating with an agreement this morning, the case in which Mr. Mankowski is the plaintiff and Mr. Zaikaner and Mr. Small is the defendant, was settled between Mr. Mankowski and Mr. Zaikaner. Under the law of this state that automatically results in a dismissal of that action as to Mr. Small because under our law the release of one joint tort feasor releases all, so from here on in we will be trying only the case of Mr. Zaikaner against Mr. Small, and the counter suit of Mr. Small against Mr. Zaikaner."

According to plaintiff this statement constituted prejudicial error which resulted in depriving plaintiff of a fair and impartial trial by the jury.

We find nothing in the record to indicate that counsel for plaintiff at any time prior to his motion for a new trial objected to or questioned the court's explanation to the jury which he now criticizes. The record indicates that there was a chamber consultation following which the court made the explanation to the jury of the settlement of the companion case. The following authorities indicate that the remarks of the trial court cannot be made the basis for a new trial unless objected to when made. Starks v. Starks, 220 Minn. 313, 19 N. W. (2d) 741; Merchants & Farmers Mutual Cas. Co. v. St. Paul-Mercury Ind. Co. 218 Minn. 386, 16 N. W. (2d) 463; 14 Dunnell, Dig. (3 ed.) § 7098; also see, Rule 51, Rules of Civil Procedure.

In Merchants & Farmers Mutual Cas. Co. v. St. Paul-Mercury Ind. Co. 218 Minn. 386, 393, 16 N. W. (2d) 463, 466, this court held:

"If the court's remarks were what defendant now contends them to be, it would seem that exception thereto should have been taken by counsel at the time they were made. We have held that statements of counsel during trial cannot be made the basis of a new trial without objection or exception thereto taken at the time such statements were made, Seitz v. Claybourne, 181 Minn. 4, 231 N. W. 714, and the same rule should likewise be applicable to remarks of the court claimed to be prejudicial."

We have examined the cases cited in the plaintiff's brief which they refer to as controlling upon the aforesaid issue. We will refer especially to Mooney v. Burgess, 142 Minn. 406, 408, 172 N. W. 308, involving the admission in evidence of an immaterial letter, where the court said:

"* * * It is difficult to see where either side could be helped or hurt by this letter. We think defendant's pleading and cross-examination invited its admission, and he should not now be heard to complain. The remarks of the trial court when the letter was received cannot be assigned as error here, since no exception thereto was taken in the motion for a new trial."

Plaintiff relies in part on Esser v. Brophey, 212 Minn. 194, 3 N. W. (2d) 3, since this case stands for the proposition that evidence of compromise is inherently harmful and that nothing a judge may say or do can void the harm. The defendant has taken no exception to this ab-

stract proposition of law but contends that in the case at bar there was no such evidence introduced and further that such evidence can only affect the issue of liability in a lawsuit based upon negligence. We do not find in a consideration of the briefs and the record herein that plaintiff contests the general verdict in favor of the defendant. He does not make the claim that the evidence disclosed by the record as a whole fails to support the resolving of that issue by the jury in favor of the defendant. He merely challenges the amount of the verdict. Thus we fail to see where the trial court's statement about the termination of the Mankowski case could affect the issue of damages. Generally we think the cases cited by plaintiff on the aforesaid point are distinguishable upon their own particular facts.

In the instant case, in order to avoid any prejudice resulting, the court carefully admonished the jury near the close of his charge in the following words:

"* * * The Court does not wish to convey in any way, by word, sign, or gesture, directly or otherwise, any opinion as to whom should prevail in this case. That is your sole responsibility, and I know that you will be fair to both sides and that you will, in compliance with your oath as jurors, base your verdict upon the evidence and the law as given you in these instructions, and upon nothing else."

The court had theretofore instructed the jury in its charge that:

"Under no circumstances will you undertake to concilate [sic] or compromise these cases between the parties. Either the plaintiff, Mr. Zaikaner, or the cross complainant, Mr. Small, is entitled to full, fair and reasonable compensation for the loss he sustained as the result of damage to his car and injuries to his car and injuries to his person, or he, in each case, is entitled to nothing, depending upon your determination of the question of liability and responsibility for this collision and the resulting injuries and damage. You will eliminate any difficulty in this respect if you will first determine the issue of liability."

The trial judge took the position below that no prejudice was intended and that none resulted. Based upon the record as a whole we decline to view the statement of the court as constituting prejudicial error of such obvious and influential a character as to justify this court in granting a new trial.

■ Plaintiff also contends that the defendant failed to introduce any evidence to show what he could or would have earned if he had not been injured and that it was therefore error for the trial court to instruct the jury that defendant was entitled to recover for impairment of future earning capacity. The trial court instructed the jury as follows:

"* * * In addition to this it would include reimbursement for impairment of earning capacity resulting directly therefrom up to the present time. In addition to this it would include reimbursement for any discomfort, disability and impairment of earning capacity in the future resulting directly from such injuries as have been established to a reasonable certainty as distinguished from fair preponderance of evidence. * * * No allowance may be made for loss of income on the part of either party as none is claimed and none has been shown."

The plaintiff relies upon Person v. Sears, Roebuck & Co. 252 Minn. 110, 89 N. W. (2d) 694, wherein it was held by a divided court that it was improper to submit the issue of impairment of future earning capacity without evidence in the record of the value of a person's earning capacity.

Since the decision in the Person case was handed down, this court has reconsidered the issue in Wilson v. Sorge, 256 Minn. 125, 97 N. W. (2d) 477, in which it held as follows:

"Loss or impairment of future earning capacity is an item of general damages. To recover therefor it is unnecessary that evidence of prior earnings be introduced. The loss is based upon such factors as age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry."

Clearly, no further comment on that issue is necessary.

■ Plaintiff contends that the verdict of $20,000 was excessive and may have been occasioned by passion and prejudice and that therefore the trial court abused its discretion in refusing to grant a new trial. In reviewing the evidence as to injuries suffered by defendant, it is apparent they were severely painful in the acute state and that they have continued to be painful only in a lesser degree during the chronic state from which he now suffers. The testimony discloses that there was ankylosis or loss of motion in both shoulder joints leaving both right

and left of the upper extremities disabled to the extent of 25 percent, which injuries the jury might well find under the evidence are permanent and without hope of further improvement.

This court has frequently held that whether a verdict should be set aside as excessive rests largely in the discretion of the trial court and that an appellate court should not revise the amount of a verdict unless it would be so unjust and the impropriety of allowing it to stand would be so manifest as to show a clear abuse of discretion. It is, of course, always the duty of the trial court to keep the jury within the bounds of reason, as it is the duty of the appellate court to keep the trial court within the bounds of judicial discretion. It is not enough to justify reversal that this court would have been satisfied with a smaller verdict. This court recognizes that when the trial court is called upon to grant a new trial on the ground of the excessiveness of a verdict, or on any other grounds, it occupies a position of practical advantage over the appellate court. It has the benefit of the atmosphere of the trial as well as the entire proceedings below, much of which the record never discloses. While the verdict in the instant case may be somewhat liberal, we nevertheless reach the conclusion that the court did not abuse its discretion in refusing to grant a new trial on the ground of its being excessive.[1]

Affirmed.

---

[1] See, Riley v. Luedloff, 253 Minn. 447, 92 N. W. (2d) 806; Larson v. Degner, 248 Minn. 59, 78 N. W. (2d) 333; Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793; 14 Dunnell, Dig. (3 ed.) §§ 7133, 7136.