GEORGE MACK, FATHER AND NATURAL GUARDIAN
OF RUTH MACK, ALSO KNOWN AS
RUTH MACK COCKBURN, v. AMBROSE W. McGRATH
AND ANOTHER.
ROBIN CENTER, INC., AND ANOTHER,
THIRD-PARTY DEFENDANTS.

150 N. W. (2d) 681.

May 5, 1967—Nos. 40,119, 40,128.

*Ryan, Kain & Kressel* and *John G. Kressel,* for appellants McGrath.

*Karlins, Grossman, Karlins & Siegel, Sheldon D. Karlins,* and *Thomas V. Firth,* for appellant Robin Center, Inc.

*Hvass, Weisman & King* and *Charles T. Hvass,* for respondent plaintiff.

OTIS, JUSTICE.

This action arises out of personal injuries sustained by plaintiff Ruth Mack Cockburn when she was struck by an automobile driven by defendant Elizabeth McGrath after it leaped a curb, broke through a plate-glass window in an office building, and propelled fixtures and furniture against the plaintiff then engaged in pursuing her employment at Ben Franklin Federal Savings and Loan Association.

Plaintiff sued only the McGraths and has recovered a verdict of

$58,750. The McGraths, as third-party plaintiffs, seek contribution both from Robin Center, Inc., the owner and operator of a shopping center at 42nd Avenue and Highway No. 52, Robbinsdale, where the accident occurred, and from Ben Franklin, which designed and constructed the building where plaintiff was injured. By special interrogatories the jury determined that the McGraths are entitled to contribution from Robin Center but not from Ben Franklin. Two appeals have been taken, one by McGrath claiming plaintiff's damages are excessive, and the other by Robin Center seeking to set aside the verdict establishing its liability for contribution to the McGraths.

*The McGrath appeal on the issue of damages.*

■ At the time of the accident on July 13, 1961, Mrs. Cockburn was 19 years of age and unmarried. It is undisputed that she was violently struck by the flying objects which were propelled by the McGrath vehicle. She was hospitalized for 13 days, released, and readmitted on August 15. On August 18 her left kidney was removed. She was discharged 10 days after the operation and last saw her attending physician on November 28, 1961. On January 1, 1962, she returned to work and received a number of promotions both in her original employment and in other positions which she subsequently took. In July 1963 she was married.

Defendants McGrath argue that in the light of Mrs. Cockburn's recovery the verdict is excessive. It is conceded that her special damages were $7,394.55, and that the medical attention which she received subsequent to November 1961 was limited to examinations in anticipation of trial and was not for treatment. As a result of the accident, plaintiff has suffered a 10-percent permanent disability to her back, has very severe scarring from the operation, has had one kidney removed, and has experienced periodic fatigue from the severing of muscles in connection with the kidney operation.

The principal issues with respect to damages center on the adequacy of the foundation for submitting plaintiff's loss of future earning capacity and the question of whether plaintiff fairly presented to the jury the effect of losing a kidney.

There was no testimony, medical or otherwise, that Mrs. Cockburn would experience a loss of earning capacity in the future. She argues, however, that from the testimony concerning her muscular weakness and her 10-percent permanent back injury the jury could infer without further evidence that her services will not be in as great demand in the future as if she had not suffered those injuries.[1] We are troubled by the fact that the court allowed the jury to consider impairment of future earning capacity without further foundation. In Berg v. Gunderson, 275 Minn. 420, 147 N. W. (2d) 695, we held that it was proper to withdraw from the jury the issue of future earning capacity where plaintiff failed to prove that a permanent partial back disability would result in a loss or diminution of earnings, saying (275 Minn. 429, 147 N. W. [2d] 701):

"* * * [W]here a permanent impairment or loss of earning capacity is claimed by a plaintiff he must establish by a fair preponderance of the evidence the extent to which such impairment will be reasonably certain to occur."

It is with some hesitation that we hold the circumstances of this case do not compel a remittitur. Unless it is shown by medical or other testimony that the progress of a disability will have a detrimental effect on earning capacity, a jury should not be permitted to make a purely speculative prognosis in assessing damages. Here, however, we think laymen could properly arrive at their own conclusions without looking to medical experts for guidance. The nature of plaintiff's employment and the extent of her permanent disability were such that a jury could invoke their own collective experiences in estimating the impact of her injuries on her future job opportunities. Moreover, the fact that plaintiff received a number of promotions and was relieved of the responsibility of supporting herself by her marriage were factors which the jury had before them and undoubtedly weighed in de-

---

[1] Lieberman v. Korsh, 264 Minn. 234, 241, 119 N. W. (2d) 180, 185; Capriotti v. Beck, 264 Minn. 39, 46, 117 N. W. (2d) 563, 568; Klingbeil v. Truesdell, 256 Minn. 360, 368, 98 N. W. (2d) 134, 141; Zaikaner v. Small, 256 Minn. 275, 281, 98 N. W. (2d) 247, 251; Wilson v. Sorge, 256 Minn. 125, 132, 97 N. W. (2d) 477, 483.

termining this element of damages. We have therefore concluded that if there was error it was without prejudice.

■ It is the contention of defendant McGrath that both plaintiff's doctor and her lawyer unfairly distorted the consequences of plaintiff's losing her left kidney. It appears without dispute that under normal conditions when one kidney is removed the remaining kidney takes over the functions of both. Plaintiff's kidney doubled in size. Because kidneys are required to function for both the mother and the fetus during pregnancy, they normally become even larger. Where the mother has but one kidney, it becomes so massively distended it is subject to greater hazard from trauma. Nevertheless, there was no medical testimony that plaintiff's health would be endangered by pregnancy. Nor was there any evidence or any claim that she would become more susceptible to disease in the remaining kidney. There was medical testimony, however, on which plaintiff's counsel dwelled at considerable length, that the danger to plaintiff would be greatly increased if her remaining kidney developed a malfunction from an infection or from any other cause. Plaintiff's doctor stated that if this occurred during pregnancy "it would be a sad situation." This conclusion was based in part on the fact that the renal artery which supplied the remaining kidney did not increase in capacity in proportion to the enlarged area it was obliged to serve.

We have concluded that the verdict is generous but not excessive [2] and that the statements made by plaintiff's doctor and her lawyer were fair comment with respect to the implications of her being left with only one kidney. It seems clear, both from a medical point of view and on the basis of ordinary human experience, that the loss of a kidney exposes plaintiff to greater peril from possible injury or illness in the future since she has no vital organ in reserve to substitute for her remaining kidney if its functions ever become impaired. Under the circumstances, we hold that the defendant is not entitled to a remittitur.

[2] Mercurio v. State, 33 Misc. (2d) 729, 227 N. Y. S. (2d) 372; McKirchy v. Ness, 256 Iowa 744, 128 N. W. (2d) 910; Gillett v. Gillett, 168 Cal. App. (2d) 102, 335 P. (2d) 736.

*The Robin Center appeal on the issue of contribution.*

■   In seeking contribution from Robin Center, defendants McGrath urge us to adopt a rule that the proprietor of a shopping center has a duty to safeguard the employees of its tenants against runaway automobiles, and whether there is a breach of such duty is a jury question. The specific negligence asserted by the McGraths consists of (1) the physical arrangements which invited drivers to park at right angles to the curb, (2) the failure to provide curbing of adequate height, and (3) the lack of appropriate barriers in vulnerable areas.[3]

According to Mrs. McGrath, as she headed into an open space in front of the Ben Franklin office, she was driving slowly. She claims that she may have even come to a stop. As she approached the curb to park, she lifted her foot from the accelerator and put it on the brake. Because the pedal was worn, her foot slipped onto the accelerator with great force and propelled the car across the sidewalk some 6 or 8 feet into the front of the building and across the main area of the office.

Robin Center argues that the curbing was designed primarily to let drivers know that their front wheels had reached the sidewalk. Its height is intended to facilitate pedestrian traffic. Perpendicular parking, it is claimed, allows persons to get in and out of their vehicles safely without being exposed to cross traffic.

McGrath asserts that Robin Center had knowledge of the dangers inherent in perpendicular parking by virtue of two previous shopping-center accidents and that Robin Center should therefore be held liable for failing to take adequate measures to prevent a recurrence. Over

---

[3] In a prior action brought by Ben Franklin against McGrath for damages to the real estate, McGrath claimed Ben Franklin was guilty of contributory negligence in neglecting to construct a sufficiently sturdy building or to erect appropriate barriers. The jury in that case exonerated Ben Franklin. Robin Center now claims that the question of whether adequate barriers were provided is res judicata. Although it is doubtful that Robin Center's position is tenable because the duty of Ben Franklin to protect its own building and the duty of Robin Center to protect the employees of its tenants may be quite different, we do not reach that question because of our disposition of the liability issue.

objection the court received evidence that in October 1956 and in July 1958 automobiles which were being parked at right angles jumped the curb, went out of control, and collided with the side of a building, in one instance causing personal injuries.

No authority is cited by McGrath for holding a property owner liable for injuries to an occupant of a leased building from a runaway automobile. McGrath cites and relies on Marquardt v. Cernocky, 18 Ill. App. (2d) 135, 151 N. E. (2d) 109, 67 A. L. R. (2d) 956. There the Illinois court approved recovery by an invitee against the proprietor of a picnic area for permitting a parked car to run downhill and injure her. The parking area in that case was not only on hilly terrain but was also without barriers or curbing. The court held that defendant could foresee that an injury would occur unless parking was adequately supervised and provision made to prevent cars from running away on sloping ground near a steep hill. The facts in the Marquardt case are very similar to those in Gresser v. Taylor, 276 Minn. 440, 150 N. W. (2d) 869, filed herewith. There the runaway vehicle was also parked on the brink of a steep incline, above an area where crowds of people could be expected to gather as players and spectators at a golf tournament. In the Marquardt case the car was released by a small child. Although this was not conclusively shown to be the cause of the accident in the Gresser case, the evidence did indicate that children were playing on the side of the slope where the cars were parked. It could be anticipated that if a child manipulated the levers the parked vehicle would run downhill onto the golf course. Ordinary curbing would have prevented the accident.

We think that these cases are clearly distinguishable. In the instant case the parking area was level and the curbing was of normal height. A vehicle left unattended could not have caused any damage by the action of children or of anyone else. The fact that on two previous occasions there had been accidents which resulted in vehicles striking the sides of buildings, did not in our opinion, make the hazard one which was so inevitable or likely to reoccur that the landowner had a duty to protect against it. Two recent decisions support our views. In

Watkins v. Davis (Tex. Civ. App.) 308 S. W. (2d) 906, a truck moved suddenly from a parked position, drove through the front of a grocery store, and injured a customer. The plaintiff claimed that the proprietor was negligent in failing to provide an adequate barrier to prevent cars from running into the store. The Texas court stated (308 S. W. [2d] 909):

"* * * 'It has been held in many cases that a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again.' * * * The weight of authority, which to our mind is in accord with sound principles, is to the effect that, where the injury to the traveler results from loss of entire control and direction of an animal or machine, the occurrence falls within the domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable."

A divided Florida court adopted the holding of the Watkins case in Schatz v. 7-Eleven, Inc. (Fla. App.) 128 So. (2d) 901. The facts are very similar to those in the case before us. There the car was parked perpendicular to a 5¾-inch curb when the driver negligently caused it to be propelled forward over the curb, across the sidewalk, and into the defendant's store, striking and severely injuring a patron. The plaintiff asserted the proprietor was negligent in permitting cars to be parked at right angles and in failing to provide an adequate curb, barrier, wall, or other obstacle to prevent cars from being driven into the building. The Florida court recognized the rule that proprietors have a duty to provide a reasonably safe place for patrons but are not insurers of their safety. The duty is limited to preventing dangers of which defendant is actually cognizant or which he might reasonably foresee. The test of foreseeability, the court stated, is whether by prudent human foresight the result of the act can be anticipated because it happens so frequently that in the field of human experience

it may be expected to happen again. In concluding that perpendicular parking and normal curbing did not give rise to a cause of action against a proprietor for a runaway vehicle, the court acknowledged that at times operators lose control of their automobiles, but held that such incidents do not happen in the ordinary and normal course of events and therefore fall within the category of situations which are unusual or extraordinary and unforeseeable in contemplation of the law.

We are in accord with the conclusions reached by the Florida court.[4] The fact that over a period of five years two automobiles had gone over curbs and struck buildings did not, in our opinion, impose on the landowner a duty to anticipate and prevent the possibility of injury from other runaway vehicles. Not only would a higher curb have been ineffective to stop a vehicle driven with the speed of the McGrath car, but it would have increased the inconvenience and hazard to pedestrians who were obliged to use it. To erect an impregnable barrier around all of the buildings would both obstruct normal pedestrian traffic and impose on the owners a burden completely out of proportion to the anticipated risk. We agree that liability cannot be predicated on the fact that out of the many thousands of vehicles which use parking areas in a normal way, one or two may occasionally

---

[4] In denying recovery against municipalities for failure to furnish barricades or guardrails, we have noted (Boyd v. City of Duluth, 126 Minn. 33, 37, 147 N. W. 710, 711): "The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible." Cities must be prepared for and anticipate ordinary use, but not extraordinary, unusual, remote, or improbable occurrences. Briglia v. City of St. Paul, 134 Minn. 97, 100, 158 N. W. 794, 795, L. R. A. 1916F, 1216; Tracey v. City of Minneapolis, 185 Minn. 380, 382, 241 N. W. 390, 391.

The following rule governing foreseeability is adopted in Restatement, Torts (2d) § 435(2): "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." See, also, Jacobs v. Draper, 274 Minn. 110, 116, 142 N. W. (2d) 628, 632; Hanson v. Christensen, 275 Minn. 204, 212, 145 N. W. (2d) 868, 874; Annotation, 173 A. L. R. 626, 648.

jump the curb and expose pedestrians as well as tenants to the remote possibility of injury. We therefore hold that third-party plaintiffs McGrath are not entitled to contribution against Robin Center, and judgment in their favor is reversed.

Affirmed as to the appeal of defendants McGrath and reversed as to the appeal of third-party defendant Robin Center.