**CHUGACH ELECTRIC ASSOCIATION,**
**Inc., Appellant,**

v.

**Mike Vern John LEWIS, Appellee.**

**No. 933.**

Supreme Court of Alaska.

April 7, 1969.

Robert C. Erwin and Robert C. Lowe, Anchorage, for appellant.

Joseph L. Young, Anchorage, for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellee was employed as an electrical lineman by City Electric, Inc., which had contracted to construct power distribution lines for appellant, an electric utility company. A City Electric crew, of which appellee was a member, was transferring an electric tap line (a line running from the main line which distributes power to consumers) from the old pole of the old main distribution line to a new pole of the new main distribution line. Appellee was on the old pole. Preparatory to making a permanent connection between the tap line and the main line, a fusing arrangement called a cut-out was installed. The fuse was designed to blow and thus break the connection if there was a fault in the line when the "gate" was closed. When another City Electric employee attempted to close the gate, the fuse blew and sent flying bits of molten metal which struck appellee in the face and injured his right eye. After the accident, City Electric's foreman drove down along the line and discovered that appellant had grounded the main line, thus causing the fuse to blow.

Appellee brought this action for damages, alleging negligence of appellant in the grounding of the line and in failing to give notice of the grounding. Based upon a jury verdict, a judgment was entered in appellee's favor for $61,163. Appellant then brought this appeal contending that various errors committed by the trial court require a reversal of the judgment.

Appellant's first point is that the trial court erred in giving to the jury Instruction No. 13 concerning the duties of appellant toward appellee, based on the fact that the latter was a business invitee to the premises of appellant. Instruction No. 13 stated:

When one goes upon the premises of another for a purpose that is connected with or related to the business interests of the occupant, an invitation to use the premise may be inferred, and whether so inferred or expressed, the invitation and such purpose make the visitor an invitee.

Toward an invitee, it is the duty of the occupier of property in the conduct of any active operations on the property, to use ordinary care to avoid any injury to the invitee, and it also is the occupier's duty to use ordinary care to keep the premises in a condition reasonably safe for the invitee in the reasonable pursuit of a purpose embraced within the invitation.

But the responsibility of one having control of the premises is not absolute; it is limited to the performance of certain duties defined in my instructions. If there is danger attending upon the work which the invitee is to do on the premises, and if such danger arises from conditions not readily apparent to his senses, and if the occupant has created such conditions or has actual knowledge of them, or if they are discoverable by him in the exercise of ordinary care, it is his duty to give reasonable warning of such danger to the invitee. The occupant is not bound to discover defects which reasonable inspection would not disclose, and he is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. In brief, no duty exists to give the invitee notice of an obvious danger.

In the absence of appearances that caution him or would caution a reasonably prudent person in like position, to the contrary, the invitee has a right to assume that the premises he was invited

to enter are reasonably safe for the purposes for which the invitation was extended, and to act on that assumption.

Appellant's argument is that there was no duty on its part to provide a safe place to work for appellee as a business invitee, because while City Electric, as an independent contractor, was performing its work appellant was not in possession of the premises. Appellant relies upon section 422 of the Restatement (Second) of Torts which would impose liability on one in appellant's position for injuries to appellee only where the injury occurred while appellant had retained possession of the premises during the progress of the work by an independent contractor.[1] Appellant contends that while City Electric was doing its work, possession of the premises was in City Electric and not appellant, and therefore that appellant cannot be held liable for appellee's injuries.

Appellant's reliance on section 422 of the Restatement is misplaced. That section falls under the chapter of the Restatement entitled "Liability of an Employer of an Independent Contractor", and under topic 2 entitled "Harm Caused by Negligence of a Carefully Selected Independent Contractor." The introductory note to topic 2 states that the rules under that topic, including section 422, are "rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault."[2] We are not concerned with that subject here because liability of appellant is not predicated upon the negligence of the independent contractor, City Electric. The question of whether City Electric was negligent is not involved. What is involved is whether appellant is liable for appellee's injuries without regard to any activity of an independent contractor such as City Electric.

What we are concerned with here is the law which imposes obligations upon a possessor of land toward an invitee. Appellee was a species of invitee—a business visitor—because an invitation from appellant for appellee to enter upon the premises can be inferred from the nature of appellee's employment with City Electric which had contracted with appellant to do work on the premises.[3] This relationship between appellant and appellee subjected appellant to liability to appellee for physical harm caused to him by appellant's failure to carry on his activities with reasonable care for appellee's safety, provided that appellant should have expected that appellee would not discover or realize the danger or fail to protect himself against it.[4] The rela-

---

1. Section 422 of the Restatement (Second) of Torts provides:

   A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or ouside of the land for physical harm caused to them by the unsafe condition of the structure

      (a) while the possessor has retained possession of the land during the progress of the work, or

      (b) after he has resumed possession of the land upon its completion.

   Comment c to section 422 states:

   The rule stated applies, however, only to injuries occurring while the possessor has retained possession of the premises during the progress of the work, or after he has resumed possession of the land upon the completion of the work. The rule stated in this Section has no application to injuries occurring while the land is turned over to the contractor and he is in exclusive possession of it.

2. Restatement (Second) of Torts, Introductory Note §§ 416–29, at 394 (1965).

3. Restatement (Second) of Torts § 332 (1965) provides:

      (1) An invitee is either a public invitee or a business visitor.

        \*     \*     \*     \*     \*

      (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

4. Restatement (Second) of Torts § 341A (1965) provides:

   [H]e should expect that they will not discover or realize the danger \* \* \*.

tionship also subjected appellant to liability to appellee for physical harm caused by a condition of the land if appellant knew or by the exercise of reasonable care would have discovered the condition and should have realized that it involved an unreasonable risk of harm to appellee, provided again, however, that appellant should have expected that appellee would not discover or realize the danger or would fail to protect himself against it.[5]

Instruction No. 13 was framed in terms of such responsibility of a possessor of land to a business visitor or invitee, and as such stated the law correctly. And the facts justified the application of such rule of law. There is no question but that appellant installed the ground on the premises where City Electric was working, and that this ground caused the cut-out or fuse to blow when the "gate" was closed. It was a question of fact for the jury to determine whether in so doing appellant failed to carry on his activities with reasonable care for the safety of appellee, or whether appellant should have realized that the grounding of the line involved an unreasonable risk of harm to someone in appellee's position. And since the evidence was in conflict as to where the ground was situated and whether it could have been easily perceived, it was also a question for the jury as to whether appellant should have expected that appellee would not discover the danger and whether appellant's failure to warn appellee of the presence of the ground was a failure to exercise reasonable care to protect appellee against the dangers involved.

Appellant's next point is that the trial court committed prejudicial error in allowing appellee to call Edward Fisher as an adverse witness under Civil Rule 43(g) (12) [6] and to interrogate him by leading questions.

Appellee proposed to examine Fisher as and adverse party. Appellant objected that Fisher was not a party. Appellee then stated that he meant to examine Fisher as the managing agent of an adverse party, and the court then allowed examination of Fisher as an adverse witness. At that point appellant did not object to the examination of Fisher as an adverse witness. Nor did he register any such objection during the entire examination of Fisher by appellee. In fact, at one point appellant's counsel stated, with reference to Fisher: "Certainly he's an adverse witness."

If there was any error in permitting the examination of Fisher as an adverse witness, it was waived by appellant's failure to object and by its concession that Fisher was an adverse witness. We apply the general rule that a party may not raise for the first time on appeal an alleged error to which he failed to object in the trial court.[7]

---

5. Restatement (Second) of Torts § 343 (1965) provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

6. Civ.R. 43(g) (12) provides:

A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director or managing agent of a public or private corporation, or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party only upon the subject matter of his examination in chief.

7. Gafford v. State, 440 P.2d 405, 408–409 (Alaska 1968); Alaska State Housing Authority v. Vincent, 396 P.2d 531, 534 (Alaska 1964); Gregory v. Padilla, 379 P.2d 951, 953 (Alaska 1963).

Appellant proposed seven jury instructions which stated that the Alaska Administrative Code included certain rules as part of the Electrical Safety Code, and then ended with a proposed instruction stating that if the jury found that appellee "violated any of the safety rules provided in the Alaska Administrative Code, and you further find that such violation was a proximate cause of the accident and injury, such violation would constitute contributory negligence." The court declined to give these instructions to the jury and appellant claims this was error.

■ Four of the proposed instructions, Nos. 5, 6, 7 and 8, dealt with the duties of an employer and foreman. Appellant does not show how a violation of such duties by City Electric or its foreman would amount to negligence on the part of appellee, who was neither an employer nor a foreman.

■ Proposed Instruction No. 3 stated that employees "shall use all protective devices as required in these rules", and No. 4 provided that goggles, masks, shields, etc. shall be furnished to employees who are engaged in certain types of work. Appellant makes a point of the fact that appellee was not wearing goggles when the accident occurred. This does not show contributory negligence under the Alaska Administrative Code. The rule requiring goggles to be "furnished" obviously refers to goggles being supplied by someone other than the employee himself. Appellee cannot be charged with negligence because his employer failed to furnish him with goggles. Furthermore, the rule requiring goggles to be furnished does not refer to fusing situations, but to situations involving welding, grinding, torch cutting, snagging or chipping, handling molten metals, acids or caustics, or exposure to harmful rays, dust or flying materials of any kind. There is a specific rule that deals with fusing situations entitled "Protect from Flashes",[8] but there is nothing here requiring the wearing of goggles.

■ Finally, proposed Instruction No. 2 states that employees should "study and observe these safety rules". But there is no evidence of any failure in this respect on the part of appellee.

We find no error in the trial court's refusing to give to the jury appellant's proposed instructions regarding the Alaska Administrative Code.

Appellant's next point is that the court erred in permitting the jury to award damages for future medical expenses because there was no evidence to support such an award.

■ Appellee's principal injury from the exploding fuse was caused by bits of molten metal going into his right eye. At the time of the trial an ophthalmologist, Dr. Shoff, testified that the injury to the right eye had caused a cataract to form which made appellee blind in that eye. Dr. Shoff stated that indications were a cataract operation may become necessary. He testified as to the expense in connection with such an operation.

We believe that Dr. Shoff's testimony regarding the necessity of a cataract operation could be said to amount to proof to a "reasonable certainty" that medical expenses in connection with such an operation would occur in the future.[9] Permitting the jury to award damages for future medical expenses was not error.

Appellant next specifies as error by the trial court the giving of Instruction No. 23 which allowed the jury to consider the issue of damages for permanent impairment of

---

8. 8 Alaska Adm.Code § 409–07, at 90.36 (1965) provides:

When pulling or replacing energized fuses, they shall keep a sufficient dis-

tance to protect themselves from the possibility of flashes.

9. City of Fairbanks v. Nesbett, 432 P.2d 607, 618 (Alaska 1967).

future earning capacity. Appellant claims that there was no evidence to support such an instruction particularly since it was shown that appellee's wages were higher for the year of the accident than for the year before, that appellee had worked steadily since the accident, and that he was still working at the time of trial.

Such evidence is not conclusive to show lack of impairment of earning power. Appellee has suffered a permanent injury and where that is involved the whole span of life must be considered. As the supreme court of Pennsylvania has put it: "Has the economic horizon of the disabled person been shortened because of the injuries sustained as a result of the tort feasor's negligence?"[10] We believe the answer here is "yes". There was evidence that linemen such as appellee received increased wages for working over 70 feet in the air and for working with hot sticks. Since the accident, appellee would have a difficult time earning such increased pay because he found it difficult to climb poles or towers and work with hot sticks. Appellee testified that he did not feel that he was as good a lineman as he was before the accident. Adolph Schmitt, appellee's foreman on the job when the injury occurred and who worked with appellee after the accident, stated that while appellee was a very capable lineman before the accident he just was not as good as he should have been after the accident. All of this evidence would lead a reasonable mind to only one conclusion—that as time goes on appellee's progress will be curtailed and he will suffer a diminution of earning power because of the injury to and loss of sight in his eye.

Appellant relies upon City of Fairbanks v. Nesbett,[11] where we held, with respect to a lawyer who had suffered an injury to his ankle, that the record was devoid of evidence that the lawyer's capacity to earn money had been impaired. We said:

In our view this is not an instance where the jury could have determined the extent of impairment of appellee's earning capacity from the nature of his injuries and occupation and by the use of its own common knowledge and experience. [Footnote omitted.] In short, we are of the opinion that the record is devoid of evidence that appellee's capacity to earn money has been impaired. We hold, therefore, that it was error to submit this lease to the jury since they could only have speculated as to the extent of any impairment of appellee's capacity to earn money and the resulting monetary loss therefrom.[12]

That is not the situation here. An electrical lineman, whose job is often a risky one, must rely upon his sight. If his sight is impaired, it would follow according to common knowledge and experience that he will not be as effective a lineman as he was before the impairment. And it would be just as logical to go one step further and conclude that as time goes on a lineman whose sight has been impaired will probably not earn as much as a lineman with two good eyes. We have a situation here, unlike that in *Nesbett,* where the jury could invoke their own collective experience and common knowledge in estimating the impact of appellee's injury on future wages and job opportunities.[13] In addition, also unlike *Nesbett,* there is specific evidence here which we have already mentioned which tends to prove that appellee was not as good a lineman after the accident as he was before. This fact alone would be sufficient to establish impairment of earning capacity.

Appellant's final point is that the court erred in not granting appellant's motion for a directed verdict or for a judgment

10. Bochar v. J. B. Martin Motors, Inc., 374 Pa. 240, 97 A.2d 813, 815 (1953).

11. 432 P.2d 607 (Alaska 1967).

12. *Id.* at 617.

13. Mack v. McGrath, 276 Minn. 419, 150 N.W.2d 681, 684 (1967).

notwithstanding the verdict. Appellant contends that there was no evidence as a matter of law that appellant had been negligent in any way.

■ We find no error. Appellant had grounded a line which City Electric's crew attempted to energize with 7,200 volts of electricity. This grounding created a dead short and resulted in the explosion of the fuse. There was a conflict in the evidence as to where the ground was situated and whether it ought to have been noticed by appellee. There was room for diversity of opinion among reasonable men as to whether appellant, in grounding the circuit, failed to exercise reasonable care for the safety of one in appellee's position. The case was properly submitted to the jury for its determination.

The judgment is affirmed.